**UNITED STATES of America**

v.

**Joseph A. NEMETZ.**

**Crim. No. 69–55.**

United States District Court,
W. D. Pennsylvania.

Feb. 25, 1970.

———◆———

Richard L. Thornburgh, U. S. Atty., by Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for United States.

Allen N. Brunwasser, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

The defendant, Joseph A. Nemetz, was convicted of five counts of wilfully attempting to evade or defeat his income tax for the years 1962, 1963, 1964, 1966 and 1967. Title 26 U.S.C., § 7201. The evidence of his guilt was overwhelming. He has moved for a new trial assigning 66 reasons. The motion will be denied.

The great majority of the reasons assigned were the subject of motions and objections made by the defendant at trial. Most of them were argued at length by defendant's counsel, duly considered, and adverse rulings made. These reasons have been reconsidered and it is the opinion of the court that none of them would merit a new trial. Excessive delay would ensue were all of the 66 reasons to be reconsidered after the record has been transcribed only to reaffirm the rulings which the court now believes were correct. This is not to say that some error did not creep into the trial, but that which did, we think was harmless especially in view of the ample and largely undisputed evidence of guilt. Rule 52, Fed.R.Crim.P. Indeed, it appeared to the court at trial that defendant based his defense on a lively expectation, with some instigation from astute counsel, that the court would say something or make a ruling that would produce a mistrial or ultimately a new trial.[1]

The defendant requested and was granted a "Jackson v. Denno" hearing in the absence of the jury to test the voluntariness of his disclosures to special agents of the Internal Revenue Service at an interview at his office on May 6, 1968. The defendant's counsel interrogated the special agents at length. Their testimony showed that the defendant's disclosures were voluntary and certain of his records were freely turned over to them. The defendant did not take the witness stand to repudiate one word of the agents' testimony or to testify to any involuntariness, coercion, inducement, trickery, guile or misrepresentation.[2] Accordingly, the court refused to suppress the testimony of the special agents.

■ Upon resuming the trial before the jury, no evidence whatsoever was adduced that what defendant disclosed to the special agents at the interview on May 6th was a confession or that anything he said or did was involuntary. Special Agent Carpenter testified that defendant told them that his grandfather had given him approximately $80,000 in 1949 which he had kept in a brown paper bag until 1963 when he began to deposit the money in trust accounts for his four children. Examination of the deposits in four of the trust accounts (Exs. 147, 149, 151, 153) reveals that they were equal and in driblets from November, 1961, to May,

---

1. In the first trial, the defendant succeeded in securing a mistrial when the court made statements in the presence of the jury which the defendant claimed, and the court believed, were irreparably prejudicial.

2. The defendant's lengthy cross-examination of Special Agent Carpenter at the "Jackson v. Denno" hearing was replete with collateral issues which did not in any way impugn the voluntariness of the interview.

1968, when they were closed out. The prosecution was within bounds to argue that this bizarre recital was incredible. Reason No. 41 is without merit. Both agents testified before the jury that after defendant was given what was substantially a *Miranda* warning,[3] he freely turned over some records and his 1967 tax return; he did not admit to them that he had understated his taxes or had underreported his income for any taxable year. Notwithstanding, the defendant contends that "the confession was not voluntary" and it was error to refuse to suppress it. (Reason No. 2.) The jury was told to disregard the defendant's disclosures if they were found to be involuntary.[4]

Following the interview, investigation by the agents revealed a pattern of substantial underreporting of income for all the indictment years. It was also shown that following the request on May 2, 1968 by the agents for an interview, the defendant withdrew nearly $100,000 from his several savings accounts on May 3rd and 7th, 1968.

Constantly throughout the trial the defendant contended that the court should have required "the government [to] supply a complete examination and furnish explanations of materials and supplies plus labor and the reasonable costs thereof, all of which placed the burden of doing this on defendant." (Reason No. 9.) In the first place, the prosecution, after inquiry by defendant, stated explicitly in writing that its method of proof of tax evasion was the "specific items" method.[5] If the "burden" was cast upon the defendant to prove the cost of his materials, supplies and labor, he failed to adequately meet it. Although there was evidence that several persons helped the defendant in his roofing and construction business, not one of them was called to establish his method or rate of compensating them. His tax returns indicated that he subcontracted his contracts, but not one subcontractor was called in defense to substantiate a sharing of the proceeds in excess of that stated in the returns as the cost of subcontracting. Since he paid for his supplies in cash only the defendant and his workmen had the personal knowledge to estimate the materials and supplies which went into each job,—but none of his workmen was called. The defendant's cash invoices were allegedly stolen or destroyed by fire.

It was held in United States v. Stayback, 212 F.2d 313 (3d Cir. 1954), and in United States v. Shavin, 320 F.2d 308 (7th Cir. 1963), that in a specific items case, the government does not have the burden of establishing the defendant's operating costs. In *Stayback* it was stated (p. 317 of 212 F.2d):

> "It is well settled that once the government establishes unreported income of the defendant and allows deductions claimed by him in his tax return and others that it can calculate without his assistance, the burden is on the defendant to prove that he had other allowable deductions which were

---

3. The following cases hold that a *Miranda* warning does not extend to a pre-custody Internal Revenue Service inquiry: United States v. Jernigan, 411 F.2d 471 (5th Cir. 1969); Cohen v. United States, 405 F.2d 34 (8th Cir. 1968); United States v. Squeri, 398 F.2d 785 (2d Cir. 1968); Spinney v. United States, 385 F.2d 908 (1st Cir. 1967); United States v. Maius, 378 F.2d 716 (6th Cir. 1967); Morgan v. United States, 377 F.2d 507 (1st Cir. 1967); Rickey v. United States, 360 F.2d 32 (9th Cir. 1966); Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965); United States v. Charamella, 294 F.Supp. 280 (D.Del.1968); United States

v. White, 293 F.Supp. 692 (E.D.Pa. 1968); United States v. Basil, 268 F. Supp. 1018 (S.D.Fla.1967); United States v. Bachman, 267 F.Supp. 593 (W. D.Pa.1966); United States v. Fiore, 258 F.Supp. 435 (W.D.Pa.1966).

4. Cf. Williams v. United States, 89 U.S. App.D.C. 32, 189 F.2d 693 (1951), wherein it was held, absent evidence of involuntariness, that it was unnecessary to submit that question to the jury.

5. See brief of the United States in response to motions filed by the defendant, page 4, item E, and Judge Gourley's Order filed on July 9, 1969, at ¶ 4.

not shown in his return: United States v. Smith, 3 Cir., 1953, 206 F.2d 905; United States v. Link, 3 Cir., 1953, 202 F.2d 592; United States v. Hornstein, 7 Cir., 1949, 176 F.2d 217. The government is not required to prove the negative, i. e. that the defendant did *not* have any other deductions. Gariepy v. United States, 6 Cir., 1951, 189 F.2d 459.

" \* \* \*

" 'The figures of cost of goods sold, as they were used in preparing his tax returns, were at least admissions by the defendant which the government could utilize in making a prima facie case. The defendant was chargeable with them until he offered credible evidence to show that the figures were in error, and that his costs were greater. \* \* \* The defendant herein was under an obligation to keep correct books and records; he did not do so. Having adopted that course he cannot now sit back and insist that the government prove a complete debit and credit account.' "

██ Of course, the burden of proof rested on the prosecution and the jury was so instructed. But the prosecution does not have the burden of going forward with the evidence to negate unreported deductions. United States v. Procario, 356 F.2d 614 (2d Cir. 1966).

██ No requirement exists to compel the Internal Revenue Service to investigate the defendant's case, although in a net worth case, agents are required to follow up reasonable explanations by the taxpayer inconsistent with guilt, Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). This rule does not apply in a specific items case, especially where, as here, no explanations were advanced by the taxpayer to the Internal Revenue Service relating to unreported expenses for materials, supplies, labor and unreported payments to subcontractors. Not until the trial did the defendant contend, largely by way of

cross-examination, that he had understated the costs of materials, supplies and labor.[6] He never advised the Internal Revenue Service of his alleged unreported expenses and disbursements. Cf. United States v. Procario, *supra*. The only testimony he introduced on this point was in attempting to establish certain business expenses. "No one would doubt that the jury was not bound to believe the underlying facts upon which he says those deductions are based." United States v. Smith, 206 F.2d 905, 910 (3d Cir. 1953).

Not only did the government explicitly state that it would rely on the specific items method to prove the defendant's guilt, but summaries (Ex. 167) contained only the amounts the defendant was paid by the persons who hired him plus items of interest he received during the indictment years. No one suggested that the deposits in the trust accounts in the First Federal Savings & Loan Association of Homestead were to be computed as unreported income. The trust accounts and his other savings and loan accounts were introduced solely to show the specific items of interest he received during the indictment years, and, of course, the principal of the deposits was corroborative of the considerable well-established specific items of income received and unreported during the indictment years.

██ Another matter which the defendant raised throughout the trial and in his motion was that certain checks, introduced as exhibits to corroborate the testimony of government witnesses that they had paid the defendant various amounts of money for work he had done, were inadmissible absent proof that the endorsements on the checks, purporting to be the defendant's signatures, were actually signed by the defendant. Each witness testified that the defendant had been paid for work contracted and performed, and each signed the check as payor or identified the signature of the

6. It is to be noted that defendant was given credit for "additional" expenses in each indictment year (Ex. 167).

payor. Apparently, the defendant would have the government negate a forgery of the check endorsements in his name. The issue, with respect to the checks, was not whether the defendant endorsed the checks, but, rather, whether the defendant received certain payments for work done to which the payors testified and affirmatively produced their cancelled checks as corroborative evidence of payment. In the circumstances there was no error in admitting the checks into evidence. Moreover, if proof were needed that the defendant's endorsements on the checks were authentic, it could be found in abundance. Many of the 58 witnesses testified that they not only paid the defendant by check but that he signed contracts for the work and receipts when he was paid. Many such contracts and receipts were admitted into evidence along with the cancelled checks, and the defendant does not complain of their admissibility into evidence. These documents and the savings and loan signature cards and ledger sheets introduced into evidence bear undisputed signatures of the defendant, and the most cursory examination of them will reveal their unmistakable similarity to the endorsements on the checks.

The defendant assigns as error the instructions on reasonable doubt (Reason No. 61). He contends that the court improperly used the standard "of the highest importance" in defining reasonable doubt. In United States v. Ward Baking Company, 224 F.Supp. 66, 76 (E.D.Pa.1963), it appears that Judge Van Dusen in that case and a number of other cases, in his instructions on reasonable doubt used the words "in matters of highest importance". In United States v. Senior, 274 F.2d 613, 617 (7th Cir. 1960), the words "to pause or hesitate before acting in a grave transaction of your own life" were used and approved. Similar words have been used by other district courts. United States v. Interstate Engineering Corporation, 288 F.Supp. 402 (D.N.H.1967); Scurry v. United States, 120 U.S.App.D.C. 374,

347 F.2d 468 (1965); United States v. Schneiderman, 106 F.Supp. 906 (S.D. Cal.1952); United States v. Foster, 9 F.R.D. 367 (S.D.N.Y.1949). There is no merit in reason No. 61.

An appropriate order will be entered.