**UNITED STATES of America**

v.

**Joseph A. NEMETZ, Appellant.**

**No. 18850.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 5, 1971.

Decided Nov. 4, 1971.

Allen N. Brunwasser, Pittsburgh, Pa., for appellant.

Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, GANEY and ADAMS, Circuit Judges.

OPINION OF THE COURT

PER CURIAM:

Joseph Nemetz was convicted of violating 26 U.S.C. § 7201 by wilfully evading the payment of taxes for the years 1962, 1963, 1964, 1966 and 1967. Following the denial of his motion for a

new trial,[1] Nemetz appealed setting forth a number of grounds for reversal of his conviction and the award of a new trial.

The evidence of Nemetz's guilt adduced at his jury trial was, according to the district court, overwhelming. Nemetz was a building contractor engaged primarily in home roof repairs. The government, by direct evidence, showed that the taxable income Nemetz should have reported in the years specified in the indictment far exceeded that which he did report.[2]

The two substantial contentions advanced by Nemetz concern his right to counsel during the Internal Revenue Service [IRS] investigation of his records, and his alleged right to intervene during IRS interviews of persons served with process pursuant to 26 U.S.C. § 7602.

In March, 1968, the IRS, acting on information received from an informant, assigned a special agent, Vernon Carpenter, to examine Nemetz's financial records. On May 2, 1968, the special agent telephoned Nemetz and told him that he was to investigate Nemetz's 1964, 1965 and 1966 tax returns. The special agent further stated that he wished to see Nemetz's cancelled checks, books and records, and arranged a meeting on May 6, 1968 for that purpose.

Concerning the May 6th meeting, Carpenter's uncontradicted testimony at the Jackson v. Denno hearing and at trial was:

A. "Well, I told Mr. Nemetz that as a special agent it was my duty to investigate possible criminal income tax violations. I also informed him that I had been assigned to investigate his income tax liability for the years '64, '65 and '66, and I told him that under the Constitution of the United States he had the right to refuse to answer any questions, furnish any information or submit any documents which he felt might tend to incriminate him. I also told him that any information which he did furnish or any documents which he did submit could be used against him in any criminal action that might be undertaken.

As I was finishing my statement to Mr. Nemetz, he told me he understood he also had the right to have an attorney present during the interview and I told him that was correct, he did have the right to have an attorney present during the interview. I then asked him if he wished to proceed with the interview without an attorney. He said he did, and so I asked him questions relative to his financial and income tax liability.

Q. Did you ask him if he understood his rights?

A. Yes, I did. He said that he did."

Based on this and other testimony presented at the Jackson hearing, the trial judge found that all the actions taken by Nemetz at the May 6th meeting were voluntary and that all the evidence obtained therefrom was admissible.

1. Chief Judge Marsh's able opinion denying the motion is reported at 309 F.Supp. 1336 (W.D.Pa.1970).

2. The following table illustrates the large variances between Nemetz's reported income and the taxable income the government proved should have been reported.

|      | Taxable Income Per Return | Proven Taxable Income |
|------|---------------------------|------------------------|
| 1962 | $3,252.67                 | $26,860.40             |
| 1963 | 2,906.91                  | 33,377.43              |
| 1964 | 337.35                    | 7,873.47               |
| 1966 | 5,037.94                  | 63,332.91              |
| 1967 | 4,083.98                  | 12,061.03              |

**926**

Nemetz contends that the right-to-counsel warning given him by Carpenter was inadequate under the test of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This Court has held, however, that the stringent *Miranda* doctrine does not apply to tax fraud investigations. Rather the traditional voluntariness test is to be utilized. United States v. Jaskiewicz, 433 F.2d 415 (3rd Cir. 1970). The testimony quoted above illustrates Nemetz's knowledge and understanding of his rights and that any action he took was voluntary. Under these circumstances, since Nemetz was aware of his right to counsel, no error was committed in admitting into evidence his books, records and cancelled checks.

Nemetz next claims that because he was not permitted to intervene during interviews conducted by IRS agents with persons whose appearances had been compelled by service of Section 7602 summonses, all evidence obtained as a result of these meetings should have been suppressed. That the taxpayer has no absolute right to intervene in such proceedings is beyond question. Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Further, in a more compelling case than that presented by Nemetz, the Fifth Circuit held that an order of the district court granting intervention—although based on its sound discretion—was nevertheless improper. United States v. Newman, 441 F.2d 165 (5th Cir. 1971). We are unable to distinguish Nemetz's case from either *Donaldson* or *Newman* and we hold, therefore, under the facts established at trial, that Nemetz had no right to intervene.

The other points raised by Nemetz have been carefully considered, and we find them lacking in merit. Accordingly, the judgment of conviction will be affirmed.