UNITED STATES of America and Joseph A. Dollard, Special Agent Internal Revenue Service

v.

Americo V. CORTESE, Prothonotary Court of Common Pleas Philadelphia, Pennsylvania.

Civ. A. No. 76–3941.

United States District Court, E. D. Pennsylvania.

April 28, 1978.

Walter S. Batty, Jr., Asst. U. S. Atty., Robert N. deLuca, U. S. Atty., Philadelphia, Pa., Joseph M. Gontram, Asst. U. S. Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Robert C. Daniels, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for intervenors.

Jonathan Vipond, III, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FOGEL, District Judge.

In this Internal Revenue Service summons enforcement proceeding, the plaintiffs, the United States of America, and Joseph A. Dollard, Special Agent, Internal Revenue Service (IRS), seek certain records filed by nine members of the bar with Americo V. Cortese, Prothonotary of the Philadelphia County Court of Common Pleas. *We have granted leave to these nine attorneys to intervene in this proceeding, and they have moved to dismiss the government's complaint and to quash the Internal Revenue Service's summons.*

Intervenor's motion to dismiss will be granted for the following reasons:

## I. PROCEDURAL AND FACTUAL HISTORY OF THE CASE

Plaintiffs' complaint, filed December 23, 1977, contains the following essential averments: (1) Special Agent Dollard has been assigned to determine the federal tax liabilities of fourteen named attorneys, for the years 1971 through 1975 inclusive; (2) defendant Cortese has books and records relevant to the determination of the tax liabili-

ties of those individuals; (3) defendant failed to appear in response to a series of summons issued by the IRS directed to him; and (4) on May 28, 1976, defendant failed to produce the books and records demanded. The complaint also alleges the following salient matters: (1) the information sought may be relevant to the determination of the tax liabilities of the named individuals; (2) the information is not in the possession of the plaintiffs; (3) the investigation is being conducted for a legitimate purpose; and (4) the plaintiffs have complied with the administrative procedures required by the Internal Revenue Code.

Copies of the IRS series of summons are attached as exhibits to the complaint. Each such summons required the defendant to appear before Special Agent Dollard, and to produce two categories of records for each of the named attorneys: *first,* "All contingency fee agreements filed by or for the above-named individual with the Prothonotary's office during the years 1971 through 1975, inclusive;" and *second,* "All statements of distribution filed by or bearing the name of the above-named individual with the Prothonotary's office during the years 1971 through 1975, inclusive." [1]

As an additional exhibit in support of the allegations of the complaint, plaintiffs also submitted the affidavit of Special Agent Dollard. Upon consideration of the complaint, and its exhibits, we issued an Order to Show Cause, requiring the defendant to appear for a hearing on January 6, 1977. [2]

In response to the plaintiffs' complaint, defendant filed a "Statement of Defendant," representing that the defendant was prepared to produce the documents which were the subject of the various summons

---

1. Such contingency fee agreements and statements of distribution were required to be filed with the Prothonotary, by attorneys practicing before the Philadelphia Courts, in accordance with *former Philadelphia Local Rule of Civil Procedure 202 (repealed May 20, 1976).* We will refer to these documents as "202 materials" in this Opinion.

2. At the suggestion of plaintiffs' counsel, we also ordered that all papers filed in connection with this matter be sealed and impounded, in order to protect the identity of the named attorneys who are the subject of the IRS investigation. Subsequent to our initial impoundment Order of December 22, 1976, counsel for those attorneys have requested that the docket re-

issued by the Internal Revenue Service.[3] However, defendant did request that we "afford the opportunity to any interested attorney whose records are here sought to present whatever motions or objections he might have to enforcement of the subject summons before this Court." Statement of Defendant at p. 2.

On January 6, 1977, the date scheduled for the initial hearing, nine of the named attorneys, through their counsel, petitioned for leave to intervene in this proceeding, pursuant to Rule 24 of the Federal Rules of Civil Procedure. Petitioners alleged the following matters: (1) the documents which are the subject of the IRS summons are in fact the property of the petitioners, for whom the defendant was acting as agent and custodian; (2) the defendant was unable to adequately represent the interests and legal rights of the petitioners; and (3) the petitioners desired to challenge the plaintiffs' attempt to enforce the series of summons for the 202 materials. Petitioners also enumerated the legal arguments which they intended to present to the Court, if granted leave to intervene.

At the January 6, 1977, hearing we heard the arguments of counsel with respect to the issue of intervention. We granted intervenors' motion notwithstanding plaintiffs' opposition. We also ordered intervenors to submit any motions for the Court's consideration by January 26, 1977, and we scheduled an evidentiary hearing for February 3, 1977.

Subsequent to the hearing of January 6, 1977, and prior to the filing of any appropriate motion by the intervenors, they noticed the depositions of Special Agent Dollard and Walter S. Batty, Jr., Esquire, an Assistant U. S. Attorney. Plaintiffs then moved for a protective order, arguing that discovery in "Summons Enforcement Proceedings" was inappropriate prior to an "Evidentiary Show Cause Hearing." We granted the motion for a protective order and stayed all discovery, pending the outcome of the scheduled evidentiary hearing.

The nine intervening attorneys then filed a single "Motion to Dismiss Complaint and to Quash Summonses and Grand Jury Subpoena."[4] With respect to enforcement of the IRS summons, the intervenors' motion, together with supporting affidavits, subsequently filed, sets forth the following essential allegations:

(1) the 202 materials are in fact the property of the named attorneys, not the property of the Prothonotary, and are therefore not properly subject to a summons upon the Prothonotary;

(2) the 202 materials contain information which is privileged against disclosure, by virtue of the attorney-client privilege, the Fifth Amendment privilege against self-incrimination, and the right of privacy;

(3) enforcement of the summons would constitute a violation of equal protection principles, on the theory that certain at-

---

main impounded, and we have honored that request.

**3.** Although the defendant had, in previous unrelated proceedings, resisted production of 202 materials, principally on the grounds that the 202 materials were privileged against disclosure, defendant has stated that such an argument would not be pressed in this forum. Based upon the Third Circuit decision in *In the Matter of Grand Jury Impaneled January 21, 1975, Abraham E. Freedman; In the Matter of Grand Jury Impaneled January 21, 1975, Americo V. Cortese*, 541 F.2d 373 (3d Cir. 1976), defendant has stated that he felt bound to comply with the IRS summons issued on May 28, 1976; defendant has also stated, however, that he has a duty to resist voluntary release of the 202 materials, absent consent of the attorney

who originally filed such records. Consequently, defendant has requested that we provide such attorneys with an opportunity to challenge the enforcement of the IRS summons.

**4.** Although intervenors have alleged that the government is also seeking 202 materials in connection with an allegedly related grand jury investigation, we have not regarded intervenors' motion to quash grand jury subpoenas as properly before us. The complaint before us involves solely the enforcement of the IRS summons, and any effort by intervenors to contest grand jury subpoenas in this forum is inappropriate. Additionally, the record before us clearly establishes that the grand jury subpoena, which intervenors seek to challenge, has been withdrawn by the government.

torneys who failed to comply with Local Rule 202 have not been the subject of IRS summons;

(4) the IRS summons are being used solely for the purpose of obtaining evidence for *criminal* proceedings; and that there is no bona fide civil tax investigation of the intervenors;

(5) enforcement of the IRS summons would constitute an abuse of the Court's process, since the Government is engaged in a "sheer fishing expedition," arbitrarily and randomly selecting attorneys for investigation by means of an "invidiously discriminating process" which is targeted at members of the Jewish and Italian legal communities;

(6) the IRS failed to comply with § 7605(b) of the Internal Revenue Code, which restricts the IRS to one investigation of a taxpayers' books of account per taxable year.

Although the intervenors' motion is extensive, we believe that the foregoing summary accurately capsulizes the central areas of dispute. Plaintiffs responded to this motion by submitting a brief in opposition, and we proceeded to hold the evidentiary hearing on February 8, 1977.

At that hearing we heard testimony from Joseph Dollard, Special Agent, Internal Revenue Service. Dollard testified briefly as to the essential averments of the complaint and as to matters which had been raised by the intervenors' motion to dismiss; he was cross-examined extensively by counsel for the intervenors. His testimony focused upon several issues: *first,* whether the IRS investigation was solely for a criminal purpose, as alleged by the intervenors; *second,* whether the 202 materials were in fact possibly relevant to the tax liabilities of the named attorneys; and *third,* whether the IRS investigation was a legitimate one, conducted in good faith.

In connection with the good faith issue, Dollard was questioned with respect to the criteria the IRS used in determining the taxpayers to be investigated. He testified as follows: (1) the IRS received certain records and information from a confidential informant, (relating to attorneys involved in negligence work in the Philadelphia area); and (2) the IRS then selected certain of these attorneys for investigation, with the selection based upon information from the informant's records as to the comparative volume of cases handled by these attorneys. Although counsel for the intervenors attempted to elicit, upon cross-examination, the identity of the informant, as well as the nature of the documents provided to the IRS, we sustained the plaintiffs' objections to those lines of inquiry; we prohibited questioning as to the identity of the informant, his employment, or any other information which might endanger his anonymity and security.

At that time, however, we stated that we would be willing to hold an *in camera* session with plaintiffs' counsel, for the purpose of reviewing the documents which the informant had provided to the IRS. At the conclusion of the evidentiary hearing on February 8, 1977, counsel for the intervenors stated that there were a number of other factual areas which intervenors wished to pursue. We determined that the proper method of resolving these factual disputes was by resort to discovery, rather than by a continuation of protracted hearings. Accordingly, we scheduled an *in camera* session with the government attorneys, and established a timetable for discovery. (We also entered an Order enforcing the IRS summons, as to the five named attorneys who had not intervened in the summons enforcement proceeding.) [5]

5. Subsequent to the February 8, 1977, hearing, a Philadelphia law firm filed a motion on behalf of "six interested individuals", seeking leave of court to be present during any discovery proceedings which did take place. The motion alleged that the law firm represented six attorneys whose 202 materials were the subject of the IRS summons issued on May 28, 1976, and

that the six attorneys had not intervened in this enforcement proceeding.

We granted the motion, by Order of February 17, 1977; our Order authorized an attorney from the petitioning law firm to be present during the discovery proceedings, on the condition that attorneys of that firm and their six

Pursuant to the intervenors' request, we did in fact conduct a series of *in camera* sessions, designed to elicit further information concerning the issuance of the summons and the IRS' investigation of the negligence bar. The first such session took place on February 23, 1977. We questioned the IRS agents, and the attorneys for the government concerning the following matters: (1) the identity of the confidential informant; (2) the nature of the documents which the informant had provided to the IRS; (3) the precise manner in which the documents were obtained; (4) the contacts between the IRS and the informant; (5) the motives underlying the IRS investigation; (6) the nature of that investigation; (7) the manner in which the IRS selected certain attorneys for investigation, as well as the criteria used in making that selection; and (8) the involvement of the U. S. Attorney's Office in the IRS investigation.

On March 3, 1977, we questioned the informant, under oath, with respect to the following subjects: (1) his own motives in providing documents to the IRS; (2) the manner in which he obtained the documents; (3) the nature of the documents; (4) his dealings with the IRS; and (5) his own opinion as to whether any of these documents could be released, without jeopardizing his identity.

On March 14, 1977, we held a third and final *in camera* session with the government attorneys. The purpose of this session was to further discuss the problem of turning over the documents provided by the informant to the intervenors; the government took the position that disclosure of the documents, or even of a capsule summary of their contents would in all probability lead the intervenors to the source of those documents and to the identity of the IRS informant. While we reserved any decision as to disclosing the confidential documents, we did take steps to satisfy ourselves that the intervenors at least had access to the 202 materials which were the subject of the summons enforcement proceeding.[6]

The intervenors deposed Dollard on March 30, 1977. Questions concerning the scope of discovery proceedings arose and the intervenors filed two motions to compel answers. On October 28, 1977, we issued an Order which allowed the deposition of Batty to be taken in compliance with Department of Justice regulations. His deposition was taken on November 23, 1977.

Our Order rejected intervenors' allegations that "inter-agency exchange of information" was an issue and that the summons were issued for criminal purposes. We declined to allow discovery of any documentation to the intervenors which would have jeopardized the identity of the confidential informant. Finally, we limited the scope of further discovery to two issues:

a) whether the IRS is conducting a legitimate investigation, for proper purposes, in good faith; and

b) whether the summons in this case pose "second inspection" problems under § 7605(b) of the Internal Revenue Code.

A final evidentiary hearing was held January 31, 1978, at which time testimony was

---

clients not discuss this case with persons other than the parties to the litigation.

The same law firm then filed a motion to intervene on behalf of yet another attorney whose 202 materials had been summoned by the IRS. We denied that motion to intervene, since the IRS summons as to that particular attorney had already been enforced, under the terms of our Order of February 8, 1977 (he was one of five attorneys as to whom we did enforce the IRS summons). However, we did grant the petitioning law firm permission to be present during discovery on behalf of this attorney, in addition to the six other attorneys for whom such permission had been previously granted, and subject to the same restrictions

concerning confidentiality. *See,* Order of March 19, 1977.

6. Pursuant to discussions at the final *in camera* session and with the consent of the attorneys for the government, we made a formal written inquiry of counsel for defendant, Americo V. Cortese, Prothonotary, by letter dated March 15, 1977. We inquired of defendant as to whether the 202 materials, which the IRS is seeking, had been made available to the intervenors.

Defendant's counsel, by letter of March 24, 1977, assured us that the intervenors had in fact been given notice of the IRS summons, and that these attorneys had in fact obtained copies of their 202 materials.

heard from Jonathan Vipond, III, Esquire, Robert Meistering, Supervisor, Administrative Services, Honorable I. Raymond Kremer of the Court of Common Pleas of Philadelphia County, and Alan M. Feldman, Esquire.

Jonathan Vipond, III, Esquire, counsel for the Court Administrator of Pennsylvania, testified as to the nature of the summons and a subpoena served on the Prothonotary's Office of the Court of Common Pleas of Philadelphia County, as well as to an agreement with the U. S. Attorney's Office to withdraw the Grand Jury subpoena in return for the Prothonotary's assurance that he would keep all of the 202 documents and not return them to the attorneys who filed them until the U. S. Attorney's Office was notified; he also testified as to communications between the U. S. Attorney's Office and the Court Administrator's Office.

Robert Meistering, Supervisor of Administrative Services for the United States District Court for the Eastern District of Pennsylvania, testified as to the existence of a Grand Jury which was impaneled on April 22, 1976, and discharged on October 27, 1977.

Honorable I. Raymond Kremer, Judge of the Court of Common Pleas of Philadelphia County, testified by way of an offer of proof on: alleged agreements and understandings he had made with the Prothonotary at the inception of the enforcement of Rule 202; accounting principles for law partnerships; and the value of the 202 distribution sheets for the purpose of determining an individual attorney's income tax liability.

Alan Feldman, Esquire, a former special intelligence agent with the Internal Revenue Service, testified that a special agent's purpose is to recommend criminal prosecutions; and that based solely on the 202 materials, an individual attorney's income tax liability could not be determined.

The intervenors then filed nine affidavits concerning their understanding of the nature of the 202 filings and whether or not they had been previously audited by the IRS for the years 1970 to 1975 inclusive. Both the intervenors and the government filed supplemental briefs.

## II. DISCUSSION

■ The purpose of the many hearings held in this summons enforcement proceeding [7] was to allow the intervenors an opportunity to present evidence of a possible abuse of the Court's process.

> Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

*United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). *See, Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1963).

> Unquestionably the broad investigatory powers of IRS agents will occasionally be subject to abuses. The courts should be attentive to circumstances where such abuses are likely to have taken place.

*United States v. McCarthy,* 514 F.2d 368, 375 (3d Cir. 1975).

There are two areas of potential abuse currently before this Court which would prevent us from enforcing the outstanding summons. They are as follows: 1) did the IRS conduct a legitimate investigation, for proper purposes, in good faith?; and 2) did the summons in this case pose "second inspection" problems under § 7605(b) of the Internal Revenue Code? 26 U.S.C. § 7605(b).

■ *After a thorough review of all the facts and circumstances leading up to the instant enforcement proceeding, including the facts disclosed at the three in-camera sessions, we will grant the motion to dismiss and deny enforcement of the summons.* The basis for this result rests upon the information elicited *in-camera* as to the status and motivation of the confidential informant who supplied the original information to the IRS.

---

7. Pursuant to 26 U.S.C. § 7604(b).

■ We find as a fact that the IRS investigation was not pursued in good faith. The improper purpose on the part of the informant is inextricably intertwined with the IRS investigation. We will not allow the IRS, under a mask of official action, to perpetrate acts which undermine the very foundation of fair dealing by government agencies. The poisoned vine has produced poisoned fruit.

■ Our disposition of the case on this ground makes it unnecessary for us to rule on the "second audit" question, and on the numerous other grounds raised by the intervenors. *However, the severity of the charge that the entire investigation was discriminatory because it was launched against attorneys who are either Italo-Americans or members of the Jewish faith, compels us to state unequivocally and categorically that there is not even a scintilla of evidence to substantiate that reckless claim. We utterly reject this contention. However, this does not negate our finding that the entire motivation of an informant, wedded body and soul to the insurance industry, turned out to be the motivation of the IRS itself.*

Because we previously decided to not disclose the identity of the confidential informant, the basis for our factual finding must, of necessity, be brief.

It is our conclusion that certain interests, which are adverse to the class of intervenors, have used the IRS with its knowledge as a "cat's-paw" to accomplish its purpose of retribution against the class of negligence attorneys.

Informants, of course, have historically been known to hold grudges against those who are the subject of the information. Our finding of bad faith by the IRS is mandated because of the unusual facts and circumstances of this case.

There is no evidence that the IRS had knowledge of any violation of the Internal Revenue Code by any of the intervenors, nor by the other members of the negligence bar. The informant likewise never indicated any knowledge of any wrongdoing. The information supplied did not concern a limited number of individuals. The data was wholesale in nature and concerned virtually the entire Philadelphia negligence bar. Negligence attorneys were the sole target of the investigation. Attorneys who worked on contingency fee arrangements in other areas of the law were not under investigation although it is clear that Rule 202, while still in effect, applied to them as well. The IRS had to realize that the informant, who was instrumental in furnishing thousands of documents designed to get within an IRS net all of the members of the personal injury bar who customarily handle cases for plaintiffs in Philadelphia, was pursuing its own business purpose by giving the IRS the data.

*A different result would obtain if the informant gave information which linked a finite number of individuals with actual violations of the Internal Revenue Code.* It suffices to say we are convinced, and so find, that certain interests centered in the insurance industry used the IRS for a wrongful purpose; unfortunately, the IRS permitted itself to be so used.

For the reasons set forth in this opinion, which is based upon the *entire record,* we will issue an appropriate order.