UNITED STATES of America and James W. Cinelli, Jr., Plaintiffs,

v.

MANCHEL, LUNDY AND LESSIN, Defendant,

Louis Kurland, Applicant for Intervention.

Civ. A. No. 79–174.

United States District Court, E. D. Pennsylvania.

June 21, 1979.

On Motion for Stay July 24, 1979.

Will E. McLeod, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Joseph M. Gontram, Asst. U. S. Atty., Philadelphia, Pa., for plaintiffs.

Ronald F. Kidd and Sharon Butcher Watson, of Duane, Morris & Heckscher, Philadelphia, Pa., for intervenor Louis Kurland.

## MEMORANDUM AND ORDER

DITTER, District Judge.

The question in this case is whether a taxpayer may intervene in a proceeding brought by the government to obtain financial records kept by a law firm which formerly employed him.

The United States and Special Agent James W. Cinelli, Jr., (government) have issued an Internal Revenue Service (IRS) summons pursuant to 26 U.S.C. § 7602 directing Manchel, Lundy and Lessin, a law partnership which employed Louis Kurland, Esquire, from 1973 to 1975, to produce its business records as they pertain to his employment. Mr. Kurland instructed Manchel, Lundy and Lessin not to comply with the IRS summons since he planned to intervene and present objections to the court. The government then brought summons enforcement proceedings under the authority of 26 U.S.C. §§ 7402(b) and 7604(a). In support of his motion to intervene, Mr. Kurland contends that Manchel, Lundy and Lessin were third-party recordkeepers as defined in 26 U.S.C. § 7609, that he has an interest in the proceedings under Fed.R. Civ.P. 24(a) and (b), and that intervention should be permitted because there has been an abuse of process. After consideration of briefs and arguments of counsel, this motion must be denied for the reasons explained herein.

## THIRD-PARTY RECORDKEEPER CONTENTION UNDER THE INTERNAL REVENUE CODE

Under section 7609 of the Internal Revenue Code, effective February 28, 1977, when a summons is served on a "third-party recordkeeper", the person named in the summons as to whom records are sought must be given notice of the summons [§ 7609(a)] and of a right to intervene [§ 7609(b)(1)]. A third-party recordkeeper is defined as:

(A) [any bank]

(B) any consumer reporting agency (as defined under Section 603(d) of the Fair Credit Reporting Act (15 U.S.C. § 1681a(f)));

(C) any person extending credit through the use of credit cards or similar devices;

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(4)));

(E) any *attorney*; and

(F) any accountant.

26 U.S.C. § 7609(a)(3) (emphasis added).

Since Manchel, Lundy and Lessin is a firm of attorneys, the taxpayer attempts to characterize his relationship with it as being within the third-party recordkeeper definition.

Although a law partnership may seemingly be covered by one of the labels in section 7609(a)(3), a third-party recordkeeper must also "be a person engaged in making or keeping the records involving transactions of other persons. For example, an administrative summons served on a partnership, with respect to the records of the partnership's own transactions, would not be subject to these rules [§ 7609]." S.Rep. No. 94–938, 94th Cong. 2d Session 369. *See* H.R.Rep. 94–658, 94th Cong. 2d Session reprinted in [1976] U.S.Code & Admin.News, pp. 2897, 3203, 3798. In light of this legislative history, courts differentiate between those records which are maintained by a business for its own purposes, even though they relate incidentally to a taxpayer, and those records which are maintained by the business for the taxpayer's purposes. When the records are kept for the taxpayer, the business is a third-party recordkeeper and the taxpayer is entitled to notice and intervention in the proceedings. On the other hand, when the records only relate incidentally to the taxpayer and are really kept for the purposes of the business, no third-party recordkeeper relationship exists

and a taxpayer has no rights that would arise from such a relationship. *United States v. Exxon Co., USA,* 450 F.Supp. 472 (D.Md.1978); *United States v. Gartland, Inc.,* 79 F.R.D. 148 (D.Md.1978). In the instant case the records involve Manchel, Lundy and Lessin's own business transactions in the employment of the taxpayer and thus the law firm is not a third-party recordkeeper for purposes of section 7609.

## INTERVENTION AND A PROTECTABLE INTEREST UNDER THE RULES OF CIVIL PROCEDURE.

Alternatively the taxpayer asserts intervention should be allowed as a matter of right pursuant to Fed.R.Civ.P. 24(a) which states:

(a) Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ Since I have already explained that section 7609 would not confer an unconditional right to intervene on the taxpayer in this case, Rule 24(a)(1) does not apply.

The taxpayer contends that under Rule 24(a)(2) he has a significantly protectable interest in the subject of the action and its disposition may as a practical matter impair or impede his ability to protect that interest. In *Donaldson v. United States,* 400 U. S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970), the Supreme Court denied a taxpayer under investigation the right to intervene pursuant to Rule 24(a) in an IRS summons enforcement proceeding against his former employer and the employer's accountant to obtain the taxpayer's employment records. The Court reasoned that the material sought . . . consists only of Acme's [employer's] routine business records in which the taxpayer has no proprietary interest of any kind, which are not the work product of his attorney or accountant, and which enjoy no established attorney-client or other privilege. Donaldson's only interest—and of course it looms large in his eyes—lies in the fact that those records presumably contain details of Acme-to-Donaldson payments possessing significance for federal income tax purposes.

This asserted interest, however, is nothing more than a desire by Donaldson to counter and overcome Mercurio's and Acme's willingness, under summons, to comply and to produce records.

\* \* \* \* \* \*

. . . [T]his interest cannot be the kind contemplated by Rule 24(a)(2) when it speaks in general terms of 'an interest relating to the property or transaction which is the subject of the action.' What is obviously meant there is a significantly protectable interest. And the taxpayer, to the extent that he has such a protectable interest, as, for example, by way of privilege, or to the extent he may claim abuse of process, may always assert that interest or that claim in due course at its proper place in any subsequent trial. Cf. *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).

We therefore hold that the taxpayer's interest is not enough and is not of sufficient magnitude for us to conclude that he is to be allowed to intervene. 400 U.S. at 530–31, 91 S.Ct. at 542.

■ The holding in *Donaldson* is precisely on point. No significantly protectable interest exists under Rule 24(a) which would allow Mr. Kurland to challenge enforcement of the IRS summons to Manchel, Lundy and Lessin for records dealing with his employment.

In *Donaldson,* however, the Court implied that a taxpayer may be allowed to intervene where he has a privilege or claims abuse of process. In the present case, Mr. Kurland argues that the employer's records are of his financial relationships (presuma-

bly between his employer and him or between his clients and him) rather than mere employer-employee transactions, and that the disclosure of cancelled checks may reveal fees paid by clients in violation of an attorney-client privilege.

The first distinction raised by taxpayer that the records sought relate to financial relationships rather than employer-employee transactions, whatever this may mean, is insufficient to bar enforcement of the summons. On the face of the summons, the former employment relationship seems the primary focus of the investigation.[1] Additionally I do not read *Donaldson* to prevent enforcement of a summons if the information merely reveals financial relationships concerning a taxpayer.

Mr. Kurland's assertion of the attorney-client privilege is similarly without merit. Although an attorney may raise an objection based on confidentiality for his client, the privilege is for protection of the client not the attorney and no one has described what harm will result to any client from the disclosure to the IRS of Mr. Kurland's paychecks. If any serious objection as to breach of confidentiality is raised on behalf of any client, I will consider examining the checks *in camera* or ordering the clients' names, if they appear, expunged before providing these records to the IRS.

### ABUSE OF PROCESS ALLEGATION

Finally, the taxpayer asserts that he should be allowed to intervene in order to prevent abuse of process, but by way of explanation, has merely alleged that bad faith existed on the part of the government because an IRS informer was investigating

the Philadelphia negligence bar. Again the Supreme Court in *Donaldson* provides guidance on the question as to whether the mere allegation of abuse of process or bad faith amounts to such a proprietary interest as will require a taxpayer's intervention in a summons enforcement proceeding under Rule 24. In *Donaldson*, taxpayer sought to intervene in a proceeding to enforce a summons against the taxpayer's former employer and his employer's accountant alleging *inter alia* that the two special IRS agents were investigating the taxpayer for the sole purpose of a criminal tax investigation. 400 U.S: at 521, 91 S.Ct. at 537.

The *Donaldson* Court held that even where the grounds for the taxpayer's motion for intervention include a claim of abuse of process or privilege, the taxpayer's right to intervene in a summons enforcement proceeding involving an employer's records is at best permissive [2] and subject to a balancing of the equities of each particular situation. The Court noted that Donaldson's only interest at this stage in the proceedings was to counter the employer's willingness to produce its business records and that "to the extent that he has . . . a protectable interest, as, for example, by way of privilege, or to that extent he may claim abuse of process, [the taxpayer] may always assert that interest or that claim in due course at its proper place in any subsequent trial." (citations omitted) *Id.* at 531, 91 S.Ct. at 542.

As in *Donaldson*, Mr. Kurland has asserted abuse of process as the basis for his intervention motion challenging the summons requesting taxpayer's employment records [3] from his former employer. How-

---

1. The records sought include 1099's issued to Mr. Kurland, cancelled checks to Mr. Kurland for salaries, commissions, expenses, W–2's issued to Mr. Kurland, books and records substantiating payments for 1973, 1974, and 1975.

2. *Accord, United States v. Newman*, 441 F.2d 165, 172–73 (5th Cir. 1971) cited with approval in *United States v. Nemetz*, 450 F.2d 924 (3d Cir. 1971).

3. Note the similarity of the records summoned in *Donaldson*:

"applications for employment and/or any other records containing background data including Social Security number furnished you by" the taxpayer; all contracts between the taxpayer and Acme and between him "and the various organizations sponsoring performances of the circus * * * during * * * 1964 through 1967, inclusive"; Forms 1099 and W–2 issued to the taxpayer; a schedule of the payments made to the taxpayer by the sponsoring organizations;

ever, the Supreme Court held in *Donaldson* that the policy of unimpeded use of appropriate investigatory powers placed in the IRS by Congress outweighs the taxpayer's interest to intervene in the summons enforcement proceeding.

*Donaldson* has recently been supplemented by the Supreme Court's decision in *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), as well as the recent pronouncements of the Third Circuit in its opinions in *United States v. Genser*, 582 F.2d 292 (3d Cir. 1978) (hereinafter *Genser I* (; and 595 F.2d 146 (3d Cir. 1979) (hereinafter *Genser II* ).

In *United States v. LaSalle National Bank*, a bank refused to comply with IRS summonses which demanded production of files of certain land trusts created for the benefit of the taxpayer. The issue presented to the Court was whether the district court was correct in refusing to enforce the IRS summonses upon its finding that the special agent who issued them "was conducting his investigation solely for the purpose of unearthing evidence of criminal conduct." 437 U.S. at 299, 98 S.Ct. at 2359. The Court interpreted *Donaldson* to allow enforcement of a summons which meets these standards:

> First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken. Second, the Service at all times must use the summons authority in good-

faith pursuit of the Congressionally authorized purposes of § 7602. This second prerequisite requires the Service to meet the *Powell*[4] standards of good faith. It also requires that the Service not abandon in an institutional sense . . . the pursuit of civil tax determination or collection. *Id.* at 318, 98 S.Ct. at 2368.

In *LaSalle*, the Court held that the special agent's bad faith investigation which was for the improper purpose of obtaining evidence of taxpayer's criminal conduct could not necessarily be imputed to the IRS. Consequently, the *LaSalle* court found that the respondent bank failed to show sufficient justification to deny enforcement of the summonses.

Unlike *LaSalle* in which a summoned bank refused compliance, in the case before me taxpayer seeks to intervene in order to prevent a summoned party from compliance. A similar third party challenge to a summons was addressed by the Third Circuit in *Genser I*, where taxpayers appealed from convictions for income tax evasion and conspiracy contending that the convictions were based in part on illegally issued IRS summonses served on third parties.

In *Genser I*, 582 F.2d 292 (3d Cir. 1978), the Third Circuit held that the trial court erred in denying taxpayers' motion to suppress and request for an evidentiary hearing on the grounds that appellants failed to demonstrate any abuse of process and that they lacked standing. The Third Circuit's language concerning a taxpayer's standing to assert abuse of process regarding a sum-

---

checks and vouchers relating to payments to the taxpayer by Acme; expense vouchers submitted by the taxpayer; records containing information as to the identification of each sponsoring organization; and "correspondence or other records relating to the foregoing or to any other financial transactions between Acme" and the taxpayer during 1964–1967, inclusive. *Id.* at 519, 91 S.Ct. at 536–37.

with those requested by the IRS in the instant case:
1) 1099's issued to Mr. Louis Kurland, Esq.
2) All cancelled checks payable to Mr. Kurland for salaries, commissions, expenses, etc.
3) all W–2's issued to Mr. Kurland

4) Books and records substantiating these payments

Affidavit of James W. Cinelli, Jr., Special Agent, pg. 2.

4. In *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Court noted that before a summons can be enforced the IRS "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *Id.* at 57–58, 85 S.Ct. at 255.

mons issued to another person is germane to the taxpayer's challenge to the third party summons in the instant case.

We think that in consistently holding that the IRS may not use administrative summonses to gather evidence in an exclusively criminal investigation, the courts from *Reisman [v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459] and *Donaldson* onward, up to and including *LaSalle*, have identified a protectable interest in the taxpayer not to be the target of an exclusively criminal investigation in which government agents have acted beyond their statutory authority. If the civil limitation placed upon § 7602 summonses is not for the taxpayer's benefit, we have difficulty in discerning the party for whose protection it was designed. While the third party recipients of summonses may well be motivated to refuse to comply on the grounds that the summonses are overbroad or unreasonably burdensome, see e. g., *United States v. Friedman, supra*, [532 F.2d 928] at 931, 933–34; *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129 (3d Cir. 1967), *cert. denied*, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968), there is little reason to expect them to raise the defense that the summonses were issued to further a solely criminal investigation of the taxpayer. *Cf. United States v. Continental Bank & Trust Co.*, 503 F.2d 45 (10th Cir. 1974). This is not a matter of the third party bank's interest, but of the taxpayer's. Thus, the courts have provided that the taxpayer may challenge the validity of a summons issued to a third party either at the investigatory stage or, if necessary, at the trial level. (citations omitted) *Id.* at 305–06.

The Third Circuit in *Genser I* remanded the case to the district court for an evidentiary hearing on the abuse of process question. The taxpayers again raised challenges after this hearing was held, thus providing the appellate court with a further opportunity to comment on the implications of the Supreme Court's decisions on the abuse of process defense to IRS investigatory summonses. *See Genser II*, 595 F.2d 146 (3d Cir. 1979).

The Third Circuit in *Genser II* interpreted *LaSalle* to require a district court to examine each summons for its connection with the proffered civil purpose keeping in mind the following factors:

First, under *LaSalle*, the subjective intent of the agent issuing the summons does not bind the IRS as an institution. Drawing from this axiom, we believe that summonses issued by an investigating agent before that agent recommended prosecution would be virtually unassailable. *Cf. United States v. Schutterle*, [586 F.2d 1201] 78–2 USTC ¶ 9773 (8th Cir. 1978) (issuance of summons one year before agent recommended prosecution "precludes any inference" that summons violates *LaSalle*). We say "virtually" only because we can envision circumstances where, for example, an agent issued summonses at the request of the United States Attorney or delayed his recommendation at the request of his superiors solely to further a criminal investigation. Such abuses would go to the heart of the protections afforded taxpayers by *LaSalle*. *Id.* slip opinion at 9.

■ Applying the gloss given to *Donaldson* by *LaSalle* and *Genser I* and *Genser II* it is clear that the taxpayer has not asserted enough facts to show a sufficient proprietary interest as would justify intervention to raise an abuse of process defense in the present summons enforcement proceeding. No recommendation of criminal prosecution was made to the Department of Justice, thus no delay prior to such recommendation can be asserted. Furthermore, the taxpayer has not shown nor asserted that the summons was issued at the request of the United States Attorney. Rather, Mr. Kurland contends that the government has not met the requirements of good faith specified in *United States v. Powell, supra*,[5] because the summons was sparked by tainted sources and was used solely for criminal

---

5. See discussion footnote 4.

investigatory purposes. Allegedly an informer prompted the IRS to investigate Mr. Kurland. A similar tax investigation involving other negligence lawyers was held to be in bad faith by Judge Fogel in *United States v. Cortese*, 448 F.Supp. 845 (E.D.Pa., 1978). Since that case is presently on appeal to the Third Circuit and since Judge Fogel apparently did not have the benefit of the guidance of *LaSalle* and *Genser I* and *Genser II*, I conclude that *United States v. Cortese* is not binding upon my decision here. In view of the reluctance of the Supreme Court in *LaSalle* to impute institutional bad faith to the IRS based on the improper conduct of an IRS agent, it follows that a mere allegation of governmental bad faith, which is based on an informer's intent, does not amount to an abuse of process assertion.

The government's complaint and affidavits established a prima facie showing of good faith as required by *Powell* in alleging that "the investigation is being conducted for a legitimate purpose and the information being sought may be relevant to that purpose [and that] [t]he plaintiffs have complied with the administrative procedures required by the Internal Revenue Code of 1954, as amended, 26 U.S.C." Affi-

davit of James W. Cinelli, Jr., Special Agent, pg. 2, 3.[6]

According to *United States v. McCarthy*, 514 F.2d 368 (3d Cir. 1975), after the IRS makes this showing, the burden shifts to the taxpayer to put forth defenses or show that enforcement of the summons would be an abuse of process. This burden, described by the Supreme Court in *LaSalle* as heavy, 437 U.S. 298, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221,[7] is not satisfied by the taxpayer's bold assertion that the IRS summons is tainted by information supplied by an informant who is improperly investigating negligence lawyers in Philadelphia without any indication that this bad faith could be attributed to the IRS as an institution. Additionally, no recommendation to the Department of Justice has been made nor is presently contemplated. To the extent that the taxpayer has a defense of abuse of process the proper place to raise it is at trial as the Court in *Donaldson*[8] recommended and as the taxpayer did in *Genser I* and *Genser II*.

Although the Third Circuit has not been presented with a taxpayer's request to intervene based on abuse of process in a summons enforcement proceeding, the court in *Genser I* apparently[9] approves of the

---

**6.** Note that the Special Agent's affidavit does not mention that the information sought is not already within the Commissioner's possession as required by *Powell*. To the extent that any documents requested by the summons are already in the hands of the IRS, those documents need not be produced.

**7.** The Court in *Genser I* noted that evidentiary hearings are an integral part of summons enforcement proceedings and quoted *United States v. McCarthy,* 514 F.2d 368 (3d Cir. 1975) for this proposition:

'Although our proposed procedure for summons enforcement contemplates that provision for an evidentiary hearing be an integral part of the proceedings, implicit in our design is the realization that not every summons enforcement proceeding will require an evidentiary hearing. Thus, if the person summoned neither puts in issue allegations of the complaint nor raises proper affirmative defenses, no evidentiary hearing will be required; the matter can be decided on the pleadings.' 514 F.2d at 373.
582 F.2d at 302 and note 16.

However, *McCarthy* addressed itself to the *person summoned* raising proper affirmative defenses. In the instant case, the *third-party taxpayer* seeks to raise a speculative defense which may not be proper under *LaSalle.*

**8.** See *Donaldson v. United States,* 400 U.S. 517, 530–31, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1970), quoted *supra.*

**9.** Although citing *Donaldson,* the court in *Genser I* said, "Thus, the courts have provided that the taxpayer may challenge the validity of a summons issued to a third party when at the investigating stage or, if necessary, at the trial level." 582 F.2d at 306. However, I do not interpret this language to require the allowing of intervention in a proceeding where intervention would not otherwise be ordered. To grant intervention based on a speculative interest would disregard the "significantly protectable interest" language of *Donaldson.* Similarly, it would be contrary to normal adversary procedures to allow the taxpayer, a non-party, some discovery to determine whether actual abuse of process exists to endow the taxpayer with a proprietary interest sufficient for intervention.

approach adopted by many other circuits and first enunciated by the Supreme Court in *Donaldson*, postponing until trial a taxpayer's challenge to the propriety of a third party summons. *Genser I*, 582 F.2d 292, 303 and n.18 (3d Cir. 1978). The obvious purpose in this postponement is to prevent unnecessary delays in an IRS investigation at a stage where a taxpayer's outcries are pure speculation. As the *Donaldson* court noted:

> Any other holding, of course, would thwart and defeat the appropriate investigatory powers that the Congress has placed in "the Secretary or his delegate." When Grady's summonses were issued to Mercurio and to Acme, Donaldson was not under indictment and, indeed, no recommendation had been made for his prosecution. That he might be indicted and prosecuted was only a possibility, no more and no less in his case than in the case of any other taxpayer whose income tax return is undergoing audit. Prosecution will necessarily depend on the result of the audit and on what the examination and investigation reveal. 400 U.S. at 534–35, 91 S.Ct. at 544.

A policy which mandates an evidentiary hearing in every case in which a taxpayer at the summons enforcement stage attempts to intervene alleging abuse of process would cause lengthy delays in the IRS investigatory process and place a tremendous burden on the courts. Such a procedure would "cast doubt upon and stultify the Service's every investigatory move." *Donaldson v. United States, Id.* at 531, 91 S.Ct. at 543.

For the reasons expressed in this memorandum, I will order the IRS summons against Manchel, Lundy and Lessin enforced and deny taxpayer's motion to intervene.

As *Donaldson* noted the proper place for a taxpayer to raise an abuse of process challenge is after indictment, at trial. If he is not indicted, presumably the IRS was only engaged in a civil proceeding anyway. .

Naturally where a taxpayer has a statutory right to intervene, some limited discovery as to abuse of process may be proper at the summons enforcement stage. See *Genser II*, 595 F.2d 146 (3d Cir. 1979). In this situation Con-

## ON MOTION FOR STAY

The government filed a summons enforcement proceeding against Manchel, Lundy and Lessin, a law firm, seeking the records of a certain taxpayer, Louis Kurland, Esq. In my opinion and order of June 21, 1979, I denied Mr. Kurland's application for intervention pursuant to Fed.R.Civ.P. 24 and 26 U.S.C. § 7609 and enforced the summons. Taxpayer, Kurland, filed a notice of appeal from my order together with an appeal bond. Taxpayer now seeks a stay of the enforcement summons against his former employer until the Court of Appeals decides whether I acted properly in denying taxpayer's intervention motion.

 Initially, I agree that my denying taxpayer leave to intervene is an appealable, final order. *Commonwealth v. Rizzo*, 530 F.2d 501, 504 (3rd Cir. 1976); *Philadelphia Electric Co. v. Westinghouse Electric Corp.*, 308 F.2d 856, 859 (3rd Cir. 1962). Although not so labeled, the government's summons enforcement proceeding is in the nature of an injunction—it prays for an order requiring the taxpayer's former employer to produce certain records. A final or interlocutory judgment in an action for an injunction shall not be stayed as of right during an appeal, but rather is a matter within the court's discretion. Fed.R.Civ.P. 62(a) and (c).

 Discretion to grant a stay in an injunction case is governed by four factors: "(a) the applicant [for the stay must] make a strong showing that he is likely to succeed on the merits of the appeal; (b) the applicant [must] establish that unless a stay is granted he will suffer irreparable injury; (c) no substantial harm will come to other

gress has apparently decided that a right to intervention in certain limited instances outweighs any delay in IRS investigatory process. However, where Congress has not specifically provided for intervention, I defer to the original Congressional policy to promote expeditious IRS investigations and to *Donaldson's* holding that a taxpayer's speculative challenge during a summons enforcement proceeding may unduly burden the IRS.

interested parties, and (d) a stay would do no harm to the public interest." *Bauer v. McLaren*, 332 F.Supp. 723, 729 (S.D.Iowa 1971), footnote omitted, cited with approval in *Evans v. Buchanan*, 424 F.Supp. 875, 879 (D.Del.1976).

Applying these principles to the instant case, it is apparent that the taxpayer has not met the requirements for a stay. The appeal's likelihood of success on the merits is slim in view of the heavy burden on the taxpayer "to disprove the actual existence of a valid civil tax determination or collection purpose by the Service" *United States v. LaSalle*, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978); *United States v. Genser*, 595 F.2d 146 (3d Cir. 1979).

Furthermore, no injury, much less irreparable injury, to the taxpayer by virtue of a denial of the stay has been shown. If the records produced are prejudicial to the taxpayer, the proper place to raise abuse of process is at trial. *Donaldson v. United States*, 400 U.S. 517, 530–31, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1970). Since there is presently no recommendation for criminal prosecution of the taxpayer, his claims of prejudice are mere speculation.

Substantial harm will come to other parties and the public interest from the grant of the stay. The government's investigation of the taxpayer will be seriously impeded. One of the reasons for not allowing the taxpayer to intervene at the summons enforcement stage was to prevent undue hindering of the IRS investigation. To delay that process while my denial of intervention is appealed flies in the face of the policies announced by the Supreme Court in *Donaldson, supra*, and my opinion. In *Bauer v. McLaren, supra*, at 729–30, the district court refused to stay enforcement of a judgment pending appeal since a stay would disrupt the crucial investigatory activities of the grand jury.

The taxpayer has not persuaded me to exercise my discretion to grant a stay, thus the enforcement of the summons against the law firm should proceed. If a criminal action is brought against the taxpayer, he can challenge the introduction of these records at that time.