*Decisions will be entered under Rule 155.*

LOUIS R. TOMBURELLO AND ANNETTE C. TOMBURELLO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 30044-83.      Filed March 31, 1986.

Louis R. Tomburello and Annette C. Tomburello, pro se. *Jonathan J. Ono*, for the respondent.

STERRETT, *Chief Judge*: By notice of deficiency dated August 1, 1983, respondent determined a deficiency in petitioners' Federal income tax for the taxable year ended December 31, 1980, in the amount of $3,515 and an addition to tax pursuant to section 6653(a)[1] in the amount of $175.75.

The primary issue for decision is whether petitioners have unreported income for the 1980 taxable year based on the receipt of "tokes" during employment as a "21" card dealer. Also at issue is whether petitioners are liable for an

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in question, and all Rule references are to the Tax Court Rules of Practice and Procedure.

addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and exhibits are incorporated herein by this reference.

Petitioners Louis R. Tomburello and Annette C. Tomburello were husband and wife during the 1980 taxable year and resided in Reno, Nevada, at the time they filed their petition in this case. They filed their joint Federal income tax return for the 1980 taxable year with the Internal Revenue Service Center in Ogden, Utah. All references to petitioner in the singular refer to petitioner Louis R. Tomburello.

During the taxable year in issue, petitioner was employed as a "21" card dealer at the MGM-Grand-Reno Hotel and Casino (MGM) in Reno, Nevada. The parties have stipulated that in 1980 petitioner worked there for a total of 1,196.5 hours, specifically, 685.3 hours on the day shift (from approximately 10 a.m. until 6 p.m.) and 511.2 hours on the swing shift (from approximately 8 p.m. until 4 a.m.).

In the course of his employment, petitioner received "tokes" from players at the "21" game tables. "Tokes" are casino chips (house checks) that players either give to the card dealers directly or place along with their own bets as bets for the dealers. The tokes received by the "21" card dealers on each shift were pooled and divided up evenly among all of the dealers of that shift.

Petitioner did not maintain any records of the tokes he received. He did not report his receipt of tokes to his employer or on his 1980 Federal income tax return. Respondent served a summons on MGM for the production of payroll records with respect to petitioner's employment.

In the statutory notice of deficiency, respondent determined a deficiency in petitioner's Federal income tax and an

---

[2]In the notice of deficiency, respondent also determined a deficiency in the amount of $842.38 for FICA tax under sec. 3102(c)(4), and an addition to tax in the amount of $421.19 under sec. 6652(c). We do not address these issues, as this Court lacks jurisdiction to review respondent's determinations with respect to these employment tax provisions. See sec. 6213(a); *Shaw v. United States*, 331 F.2d 493, 494-495 (9th Cir. 1964) (involving sec. 6672); *Judd v. Commissioner*, 74 T.C. 651, 653 (1980).

addition to tax under section 6653(a) for the 1980 taxable year based on petitioner's failure to report as income tokes received during employment.

OPINION

The primary issue for decision is whether petitioner has unreported income based upon his receipt of tokes during employment as a "21" card dealer. In the notice of deficiency, respondent determined a $3,515 deficiency in petitioner's 1980 Federal income tax, plus a negligence addition to tax computed thereon of $175.75, for failure to report toke receipts of $13,742.[3]

At trial, respondent agreed to reduce the amount of the deficiency based on petitioner's unreported toke receipts. The parties stipulated that during 1980 petitioner worked as a "21" card dealer for 685.3 hours during the day shift and for 511.2 hours during the swing shift, for a total of 1,196.5 hours. The parties then recomputed petitioner's unreported toke receipts based upon hourly toke rates of $7.01 during the day shift and $7.87 during the swing shift, for a total of $8,827.09 in unreported toke receipts.

Petitioner does not contest that in 1980 he received tokes in the amount recomputed at trial. However, petitioner maintains that the tokes do not constitute taxable income, but rather are gifts from the gambling patrons that are nontaxable under section 102.[4] Petitioner bears the burden of proof. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

It has been established that tokes do constitute income. *Olk v. United States*, 536 F.2d 876 (9th Cir. 1976); *Catalano v. Commissioner*, 81 T.C. 8, 13 (1983), affd. without published opinion sub nom. *Knoll v. Commissioner*, 735 F.2d 1370 (9th Cir. 1984). The Court of Appeals for the Ninth Circuit, to which this case would be appealable, has rejected the argument that tokes constitute nontaxable gifts. *Olk v. United States*, 536 F.2d at 879.

---

[3]The amount of unreported toke receipts was based upon 1,197 hours of work multiplied by a toke rate of $11.48 per hour.

[4]Sec. 102 provides in relevant part as follows:

SEC. 102. GIFTS AND INHERITANCES.

(a) GENERAL RULE.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

Petitioner purports to raise two additional arguments not addressed by the court in *Olk*. First, he argues that the tokes do not constitute income because there is no contractual relationship between himself and the gambling patrons. Petitioner contends that in *Olk* the court did not consider the issue of who provides the service to the casino patrons; that is, whether it is the casino management or the dealers. Petitioner's attempt to distinguish the instant case from *Olk* on this basis must fail. The facts set forth in *Olk* at page 877, indicate that this issue was addressed, as the court stated that—

No obligation on the part of the patron exists to give [money] to a dealer and "dealers perform no service for patrons which a patron would normally find compensable." Another finding is that there exists "no direct relation between services performed for management by a dealer and benefit or detriment to the patron."

Contrary to petitioner's argument, these findings did not deter the court in *Olk* from its conclusion that the tokes constitute income.

Petitioner's second argument, even less persuasive, is that wages are not "capital gain" and therefore are not taxable as income. Clearly, wages do constitute income under section 61 and section 1.61-2(a)(1), Income Tax Regs. Moreover, this hardly presents a novel argument. Petitioner's claim is frivolous and has been rejected previously by this Court. *Rowlee v. Commissioner*, 80 T.C. 1111, 1122 (1983).

Petitioner also raises two procedural arguments with respect to respondent's determination of the deficiency. Respondent served a summons on MGM, petitioner's employer, for the production of payroll records with respect to petitioner's employment, in accordance with section 7602.[5] Petitioner argues that his due process rights have been violated because he did not receive notice of this summons in accordance with section 7609(a).[6] Therefore, petitioner

---

[5]Sec. 7602 provides in relevant part as follows:

SEC. 7602. EXAMINATION OF BOOKS AND WITNESSES.

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability
    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

[6]We note that petitioner appears to contradict his argument, as he states on brief that he

argues that he has been denied the right to intervene with respect to enforcement of the summons under section 7609(b).

Section 7609 provides in relevant part as follows:

SEC. 7609. SPECIAL PROCEDURES FOR THIRD-PARTY SUM-MONSES.

(a) NOTICE.—

(1) IN GENERAL. If—

(A) any summons described in subsection (c) is served on any person who is a third-party recordkeeper, and

(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,

then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined.

\* \* \* \* \* \* \*

(3) THIRD-PARTY RECORDKEEPER DEFINED.—For purposes of this subsection, the term "third-party recordkeeper" means—

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501(c)(14)(A));

\* \* \* \* \* \* \*

(F) any accountant.

\* \* \* \* \* \* \*

(b) RIGHT TO INTERVENE; \* \* \* —

(1) INTERVENTION.—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604 [Enforcement of Summons].

Petitioner's argument raises the question of whether a taxpayer's employer constitutes a third-party recordkeeper within the meaning of section 7609, an issue of first impression for this Court. However, the issue has been

received a letter from respondent advising him of the summons served on MGM. However, as the record does not include a copy of any such letter, which may or may not constitute timely notice for purposes of sec. 7609, we examine the merits of petitioner's argument.

addressed by numerous other courts,[7] including the Court of Appeals for the Ninth Circuit. *Rapp v. Commissioner*, 774 F.2d 932, 934 (9th Cir. 1985), affg. an unpublished order of this Court dated April 19, 1984; *Ponsford v. Commissioner*, 771 F.2d 1305, 1308 (9th Cir. 1985). We agree with the conclusions reached therein—that a taxpayer's employer is not a third-party recordkeeper, and that the employer's records are not third-party records, for purposes of section 7609.

Section 7609 provides that the records summoned by respondent must be "made or kept of the business transactions or affairs of any person (*other than the person summoned*)." Sec. 7609(a)(1)(B)(emphasis added). Also, the legislative history of section 7609 states that a third-party recordkeeper is "a person engaged in making or keeping the records involving transactions of other persons." S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 407. The Senate report continues, "For example, an administrative summons served on a partnership, with respect to the records of the partnership's own transactions, would not be subject to these rules." Therefore, we conclude that there is no third-party recordkeeper relationship with respect to employment records kept by a taxpayer's employer. Additionally, an employer's own business records are not the types of records contemplated by these special procedural rules. As the regulations state, "Third party records are books, papers, records, or other data in which the person with respect to whose liability a summons is issued does not have a proprietary interest at the time the summons is served." Sec. 301.7610-1(b)(5), Proced. & Admin. Regs.[8]

Petitioner argues that the records summoned by respondent were maintained by a third-party recordkeeper as defined in subparagraphs (A) and (F) of section 7609(a)(3). Petitioner states that his payroll records were maintained by his employer's accountants, who also kept records of

---

[7]See, for example, *United States v. Brewer*, 681 F.2d 973, 975 (5th Cir. 1982); *United States v. Berg*, 636 F.2d 203, 205-206 (8th Cir. 1980); *Buckner v. United States*, 585 F. Supp. 564, 565 (N.D. Ill. 1984); *Collorafi v. United States*, 579 F. Supp. 508, 509 (E.D. N.Y. 1983); *United States v. Manchel, Lundy & Lessin*, 477 F. Supp. 326, 328-329 (E.D. Pa. 1979); *United States v. Exxon Co., USA*, 450 F. Supp. 472, 476-477 (D. Md. 1978).

[8]The final regulations promulgated under secs. 7609 and 7610, filed on July 18, 1983, are effective with respect to summonses issued after Feb. 28, 1977. T.D. 7899, 1983-2 C.B. 265. Sec. 7610 applies with respect to any summons authorized under sec. 7602. Sec. 7610(c).

petitioner's credit union transactions. However, petitioner has failed to demonstrate that the summons was served on a "credit union" within the meaning of section 501(c)(14)(A), as required by subparagraph (A) of section 7609(a)(3). Also, the mere fact that the employer's records were maintained by accountants does not invoke the application of subparagraph (F) of section 7609(a)(3). As the regulations state, "A third party is any person served with a summons, other than a person with respect to whose liability a summons is issued, or an officer, employee, agent, accountant, or attorney of that person." Sec. 301.7610-1(b)(4), Proced. & Admin. Regs. Here, the summons was served upon petitioner's employer for the examination of the employer's own business records. The special procedural rules contained in section 7609 are inapplicable to the instant case, and petitioner's reliance thereon is misplaced.

Petitioner's second procedural attack is that interest may not begin to accrue and additions to tax may not be computed until there is a final assessment of tax liability. Petitioner's argument is unfounded. Interest on an underpayment begins to run from the last date prescribed for payment; that is, here, from the due date of petitioner's 1980 Federal income tax return. Sec. 6601. The addition to tax at issue here is a 5-percent addition based upon the amount of the underpayment. Sec. 6653(a). Moreover, where a petition for review of respondent's determination is filed in this Court, respondent is precluded from making an assessment until our decision becomes final. Sec. 6213.

Petitioner presents additional arguments in the nature of a tax protester that we need not discuss. Therefore, we sustain the deficiency in petitioner's tax for unreported income in accordance with the parties' stipulation at trial of the amount of tokes that petitioner is deemed to have received.

In the notice of deficiency, respondent also determined that petitioner is liable for an addition to tax under section 6653(a)[9] due to negligence or intentional disregard of rules

---

[9]Sec. 6653 provides in relevant part as follows:

SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME, GIFT, OR WINDFALL PROFIT TAXES.—If any part of any underpayment * * * is due to

and regulations. Petitioner bears the burden of proof that the addition has been imposed improperly. *Catalano v. Commissioner*, 81 T.C. 8, 17 (1983), affd. without published opinion sub nom. *Knoll v. Commissioner*, 735 F.2d 1370 (9th Cir. 1984). Petitioner is required to maintain records in accordance with section 6001 and section 1.6001-1, Income Tax Regs. *Cracchiola v. Commissioner*, 643 F.2d 1383, 1385 (9th Cir. 1981), affg. per curiam a Memorandum Opinion of this Court. At trial, petitioner admitted that he did not keep any records of the tokes he received. Therefore, we sustain the determination of an addition to tax under section 6653(a) in accordance with the parties' stipulation at trial of the amount of the underpayment.

*Decision will be entered under Rule 155.*

---

negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.