EVANGELOS KAIRIS AND HELEN KAIRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kairis v. Commissioner
Docket No. 17783-84.
United States Tax Court
T.C. Memo 1986-428; 1986 Tax Ct. Memo LEXIS 176; 52 T.C.M. (CCH) 439; T.C.M. (RIA) 86428; September 11, 1986. Alan R. Harter, for the petitioner. Kenneth A. Burns, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined the following deficiencies in and additions to petitioners' income taxes: *177 Addition to Tax
Year
Deficiency
Section 6653(a) [1]
1980
$6,997.00
$349.85
1981
6,091.00
304.55, plus 50% of
interest on under-
payment of $6,091.
The issues for decision are (1) whether petitioners' failure to comply with respondent's toke compliance program relieves respondent of his obligations to petitioners; (2) whether respondent correctly determined petitioners' 1980 and 1981 tip income; (3) whether petitioners are entitled to deductions for certain gambling losses; and (4) whether petitioners are liable under section 6653(a) for an addition to tax for negligence or the intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. Petitioners, Evangelos and Helen Kairis, husband and wife, resided in Las Vegas, Nevada at the time they filed their petition. They filed joint income *178 tax returns for 1980 and 1981 with the Internal Revenue Service Center in Ogden, Utah. During 1980 and 1981, Evangelos worked 1,925 and 2,063 hours, respectively, at Caesar's Palace (Caesar's). Except during a month-long culinary strike in 1980, he was employed as a twenty-one dealer. During the strike, he worked as both a cook and a maid for which he received only wages. As a twenty-one dealer, Evangelos received an hourly wage and was permitted to keep "tokes." A toke is a casino chip given by a patron to a dealer as a tip or placed by the patron as a bet for the dealer. All tokes received by twenty-one dealers during each 24 hours were pooled and divided among the dealers according to number of hours worked. Evangelos did not keep any record of his toke income for the years in issue. However, he reported tokes to Caesar's and on his tax returns of $7,914.00 and $9,170.00 for 1980 and 1981, respectively. Evangelos received wages in the respective amounts of $10,132.61 and $12,199.94 in 1980 and 1981. During 1980, Helen Kairis was employed as a twenty-one dealer by various casinos. She worked 635 hours and received wages of $3,307.37. For 1980, she reported tips totaling $150.00 *179 to her employers and on her income tax return. Helen also received $1,438.00 of unemployment compensation. During 1981, Helen Kairis was employed by the Nob Hill Casino as a twenty-one dealer. She reported wages and tips of $1,269.00 on her 1981 income tax return. Evangelos is a self-described "degenerate" gambler. When not working he regularly visits other casinos and bets on any game available. In 1980, his net losses were less than $1,000. However, in 1981 his net losses were between $12,000 and $13,000. In April 1982, Evangelos became a participant in respondent's toke compliance program. In general terms, this was a discretionary program under which the Internal Revenue Service agreed not to audit a dealer's returns for years prior to 1982 if the dealer accurately reported his tokes for 1982 to his employer on a monthly basis and on his income tax return. At the trial Evangelos admitted that he did not begin to fully report his toke receipts to Caesar's until October 1982 and that he did not report his entire toke income on his return for 1982. Due to his failure to fully comply with the program, respondent commenced an audit of his 1980, 1981, and 1982 income tax returns. *180 [2]
Respondent determined that Evangelos had unreported toke income of $18,554.75 for 1980 and $19,196.25 for 1981. [3] The determination was based upon an examination by respondent's agents of the daily receipts for 1982 reported by several of Caesar's dealers. [4] From these reports respondent's agents first determined daily modes, the total daily receipts most frequently reported by the dealers for each day of the year. The daily modes were then averaged on a monthly basis and from the monthly averages an annual daily average (eight-hour shift) of $110 was determined. The daily figure was divided by eight in order to arrive at an average of $13.75 per hour. The hourly rate was multiplied by the number of hours worked by petitioner in 1980 and 1981 in order to determine petitioner's total toke receipts for 1980 and 1981. *181 OPINION Toke Compliance Program
Petitioners contend that the audit of their 1980 and 1981 returns should not be permitted because Evangelos complied with the toke compliance program insofar as he understood it. Respondent, however, contends that the failure of Evangelos to accurately report his toke receipts to Caesar's and on petitioners' joint tax return for 1982 relieves respondent of his promise not to audit the prior years. We agree with respondent. Petitioners admit that Evangelos failed to comply with the program. They contend, however, that his failure was due to a misunderstanding of the program, but they do not contend that the misunderstanding was caused by respondent. Under these circumstances it is apparent that respondent was not responsible for Evangelos' failure to comply with the program. Consequently, the audit of petitioners' 1980 and 1981 tax returns was proper. Unreported Tip Income
Tokes or tips are includable in gross income under section 61 [Catalano v. Commissioner,81 T.C. 8, 13 (1983), affd. without published opinion sub nom. Knoll v. Commissioner,735 F.2d 1370 (9th Cir. 1984); Olk v. United States,536 F.2d 876 (9th Cir. 1976)] *182 and all taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. Section 6001. If a taxpayer receives income from tips, the required records include an accurate and contemporaneous diary of such income. Section 1.6001-1(a), Income Tax Regs. Furthermore, under section 6053 and its regulations, the employee is required to report the correct amount of such income to his or her employer. Evangelos did not keep any record of his tip income. In the absence of such records, respondent is authorized by section 446 to compute Evangelos' tip income in accordance with any method which, in his opinion, clearly reflects such income. Sutherland v. Commissioner,32 T.C. 862 (1959). Respondent has great latitude in adopting a method for reconstructing such income. Catalano v. Commissioner,81 T.C. at 13; Giddio v. Commissioner,54 T.C. 1530, 1533 (1970). The method is sufficient if the reconstruction is reasonable in light of all of the surrounding circumstances. Catalano v. Commissioner,81 T.C. at 13; Schroeder v. Commissioner,40 T.C. 30, 33 (1963). *183 Petitioners have the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners contend that respondent's calculation is erroneous in two respects. First, petitioners argue that respondent's calculation failed to take into consideration the month during which Evangelos received no tokes while he worked as a maid and cook at Caesar's. Second, they contend that respondent's use of the figures for 1982 is not compatible with 1980 and 1981, the years in question. We agree with petitioners' first contention that respondent's determination for 1980 must be adjusted for the month in which Evangelos received no tokes from Caesar's patrons. As to petitioners' second contention, it is noted that respondent's reconstruction need only be reasonable in light of all of the surrounding circumstances. Catalano v. Commissioner,supra;Schroeder v. Commissioner,supra. From the record before us it is apparent that respondent, in a thorough and professional manner, conducted an extensive examination of Caesar's toke records for 1982. While the determination might *184 have been more accurate if records for 1980 and 1981 were available, no such records were prepared for these years. Consequently, in the absence of figures for 1980 and 1981, the use of the figures for 1982 is not only justified but their use obviously produces the most correct result possible under all of the surrounding circumstances.This is especially true where, as here, the record contains no evidence tending to indicate a change in the toke rate from 1980 and 1981 to 1982. Catalano v. Commissioner,supra.
We conclude, therefore, that respondent's determination of unreported tokes for 1980 and 1981 should be sustained in all respects except that respondent's determination of unreported toke income for 1980 is reduced by $2,205.78, being one-twelfth of the total hours worked by petitioner in 1980 times the $13.75 toke rate. Gambling Losses
Petitioners contend that a portion of the toke income determined by respondent in both 1980 and 1981 is attributable to wins from Evangelos' gambling transactions and, therefore, that portion should be offset by the wagering losses which he suffered in 1980 and 1981. The tokes, however, were received in exchange *185 for the services which Evangelos performed for Caesar's patrons and were the direct result of his employment as a dealer rather than from gambling transactions. As such, the tokes constitute compensation for personal services performed and cannot be offset by gambling losses. Bevers v. Commissioner,26 T.C. 1218, 1220-1221 (1956). Addition to Tax
Respondent's determination that petitioners are liable for the addition to tax under section 6653(a) because of negligence or intentional disregard of rules and regulations is presumptively correct and petitioners have the burden of proving that the determination is erroneous. Catalano v. Commissioner,supra; Rule 142(a). Petitioners failed to maintain accurate records of Evangelos' tip income as required by section 6001 and the regulations issued thereunder and the record before us contains no evidence which tends to justify their failure to do so. Therefore, respondent's determination with respect to the addition to tax provided by section 6653(a) is sustained. Meneguzzo v. Commissioner,43 T.C. 824, 836 (1965). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. Although 1982 was covered by the audit, it is not at issue in this case.↩
3. Respondent conceded that Helen Kairis' toke receipts were correct as reported. ↩
4. Respondent's computation is as follows: ↩
Hours
Toke Rate
Toke Income
Toke Income
Year
Worked
Per Hour
Total Tokes
Reported
Unreported
1980
1,925
$13.75
$26,468.75
$7,914.00
$18,554.75
1981
2,063
13.75
28,366.25
9,170.00
19,196.25