BRANKA PETRIE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Petrie v. Commissioner
Docket No. 8860-85
United States Tax Court
T.C. Memo 1990-168; 1990 Tax Ct. Memo LEXIS 194; 59 T.C.M. (CCH) 275; T.C.M. (RIA) 90168; March 29, 1990
Branka Petrie, pro se. Paul L. Dixon and J. Michal Nathan, for the respondent. GALLOWAY
MEMORANDUM FINDINGS OF FACT AND OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1954 and Rules 180, 181, and 182. [1]
By notice of deficiency dated February 28, 1985, respondent determined a deficiency of $ 5,467 in petitioner's 1981 Federal income tax and additions to tax under sections 6653(a) (1) and 6653(a)(2) in the respective amounts of $ 273.65 *196 and 50 percent of the interest due on the amount of $ 5,467. The issues for decision are: (1) whether the notice of deficiency in which respondent determined petitioner's tax liability was null and void; (2) whether petitioner understated toke income reported on her tax return; and (3) whether petitioner is liable for the additions to tax for negligence or intentional disregard of rules and regulations. This case was one of a group of assigned cases called at a pre-trial session of the Court held at Las Vegas, Nevada. The cases contain common questions of fact or law and are among the remaining unresolved cases which arose from a toke compliance program initiated by respondent in Nevada in 1982. At the pre-trial session, the Court requested all taxpayers to report on whether their cases would be settled or ready for trial at a future trial session in Las Vegas. The parties in this case requested that their case be tried at the Court's pre-trial session. Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. Our findings of fact and opinion are combined for the purposes of clarity and convenience. *197 Petitioner was a resident of Las Vegas, Nevada, when her petition was filed. She filed her 1981 return with the Internal Revenue Service Center in Ogden, Utah. 1. Validity of Notice of Deficiency
In her petition filed with the Court on April 25, 1985, petitioner alleges in part as follows: Respondants have proceeded improperly in their unauthorized examination of petitioner's private transactions with employer. Section 7609 of Title 26 requires Notice of summons on third party record keepers. Respondants summoned records of petitioner from employer without Notice, to gather information to compute the alleged deficiency which would not have been possible without the unauthorized search of petitioners private transactions with her employer. Petitioner was denied the right to intervene in the search for her business records by respondants failure to give proper Notice. [Reproduced literally.] At trial, petitioner further argued: (1) that this Court should suppress and exclude evidence secured by respondent which resulted in respondent's determination of petitioner's underreported toke income; and (2) respondent's notice of deficiency should be quashed because *198 the information obtained by respondent to support respondent's determination was illegally obtained. Cf. Proesel v. Commissioner, 73 T.C. 600, 601 (1979). Petitioner has been employed in Las Vegas at Desert Palace, Inc., dba Caesar's Palace (Caesar's) since 1973. She has worked as a Twenty-one ("21") dealer since 1979. During 1981, the Internal Revenue Service (the Service) issued to Caesar's an Information Document Request (IDR) requesting the names, social security numbers and last known addresses of employees, including "21" dealers employed at Caesar's as of January 30, 1981. Petitioner's name and address was obtained in response to the IDR request. The IDR represented that the request was in connection with the Service's "Examination of Employment Tax return (Form 941) for the quarter ended June 30, 1981." In fact, no Employment Tax audit was undertaken. Instead, the information obtained was generally used to mail letters to the dealers to inform them of the Service's toke compliance program. Under this discretionary program, the Service agreed not to audit a dealer's tax returns for years prior to 1982 if the dealer accurately reported his tokes for *199 1982 to his employer on a monthly basis and on his tax return. The program was commonly known to the dealers and the public as an "amnesty program." The Service could have obtained the information desired concerning petitioner through the use of a "John Doe" summons. See section 7609 (Special Procedures For Third-Party Summonses). However, the Service did not follow the procedures set forth in section 7609(f) for issuance of a John Doe summons in this case. Information concerning petitioner was obtained in response to the IDR described above and her tax return for 1981 was examined in due course. The examiner's report was dated November 19, 1984. Petitioner first contends that prior to attempting to obtain information about her from Caesar's, the Service was required to give her notice under section 7609. Section 7609(a) requires that notice of a summons be given when the summons is served on a "third-party recordkeeper," as defined in section 7609(a)(3), i.e., in general, a savings bank or similar financial institution. However, Caesar's was not a third-party recordkeeper with regard to petitioner since a taxpayer's employer is not a third-party recordkeeper nor are the employer's *200 records third-party records for the purposes of section 7609. Tomburello v. Commissioner, 86 T.C. 540, 545 (1986), affd. without published opinion 838 F.2d 474 (9th Cir. 1988). Therefore, even if respondent had issued a summons to Caesar's, and that summons had identified petitioner as the person about whom information was sought, petitioner had no entitlement to notice of respondent's request for information. Respondent has conceded that it would have been appropriate to follow the John Doe summons procedures set forth in section 7609(f) and that these procedures were not followed in 1981. However, there was no violation of petitioner's constitutional rights. She has no right to protection under the Fourth Amendment with respect to the information provided respondent by Caesar's Palace. See United States v. Payner, 447 U.S. 727, 734 (1980). Furthermore, as stated above, it appears that only identifying information was obtained by allegedly improper means. The evidence presented at trial by respondent relating to the examination of petitioner's 1981 return was acquired separately and independently from respondent's prior conduct. *201 As this Court held in Proesel v. Commissioner, supra at 608, it would be stretching the exclusion of evidence rule beyond reasonable bounds to hold in every case in which the identity of an individual is somehow illegally obtained that all information subsequently acquired must be suppressed. There is evidence in the record that respondent used the John Doe summons procedures set forth in section 7609(f) to seek similar information concerning dealers working at Caesar's for years later than 1981. However, even though it is not known why the John Doe summons procedures were not used by respondent in gathering information concerning petitioner in 1981, this Court will rarely look behind a deficiency notice to review the propriety of respondent's motive in using a particular administrative procedure in making his determination. Riland v. Commissioner, 79 T.C. 185, 201 (1982); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974). In Greenberg's Express, Inc. v. Commissioner, supra at 328, we stated as follows: This Court has on occasion recognized an exception to the rule of not looking *202 behind the deficiency notice when there is substantial evidence of unconstitutional conduct on respondent's part and the integrity of our judicial process would be impugned if we were to let respondent benefit from such conduct [citing Suarez v. Commissioner, 58 T.C. 792 (1972)]. But even in such limited situations, we have refused to declare the deficiency notice null and void, as petitioners would have us do. [Citations omitted.] Assuming arguendo that there are reasons requiring us to look behind the notice of deficiency, we find no grounds for declaring the deficiency notice null and void, as requested by petitioner. We note that generally, a notice of deficiency carries with it a presumption of correctness. Thus, the burden of proof rests with petitioner to prove that respondent's determinations are erroneous. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). In this case, at best, we would shift the burden of going forward with the evidence to respondent. See Lamport v. Commissioner, T.C. Memo. 1983-629. If this were done, no benefit would result to petitioner. As discussed below, respondent has presented *203 sufficient evidence of unreported toke income to satisfy the burden of going forward, if it were shifted to him. In further support of her request that we declare the notice of deficiency null and void, petitioner presented at trial a six-page "Affidavit Opposing Predetermination Of Tips and Tokes," sworn to by her before a Notary Public of Clark County, Nevada. Respondent objected to admission of the affidavit and in particular to three of the exhibits on the ground that these documents are subject to the attorney-client privilege. Ex parte affidavits are inadmissible as evidence. Rule 143(b). Petitioner's affidavit constituted argument and was admissible for that purpose only to the extent of its probative value. The three exhibits objected to by respondent, as privileged, were: (1) a memorandum from the District Counsel, Las Vegas, Nevada, to the District Director, Las Vegas District; (2) a memorandum from the Regional Counsel, Western Region, to the Director, Tax Litigation Division, Office of Chief Counsel; and (3) a memorandum from the Chief Counsel to the Commissioner of Internal Revenue. The three memoranda are sequential and all relate to the same topic. All three *204 memoranda are from lawyers for respondent. Two of the memoranda are addressed directly to respondent or his agent. The other memorandum is addressed to another lawyer for respondent. Petitioner argues that the documents are not privileged because they "were revealed as public knowledge and public information on or about October 21, 1988, and subsequent days" in the Las Vegas newspapers and the local TV station. The documents in question all contain legal advice. There is no showing of any kind that respondent has waived the confidentiality of these communications. This Court, in Karme v. Commissioner, 73 T.C. 1163, 1182 (1980), affd. 673 F.2d 1062 (9th Cir. 1982), cited Wigmore's general statement of attorney-client privilege, which reads as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in this capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. [8 J. Wigmore, Evidence, sec. 2292 at 554 (J. McNaughton rev. *205 1961).] See also Brittingham v. Commissioner, 57 T.C. 91, ()6 (1971). Although Wigmore's formulation limits the privilege to communications made in confidence by the client, confidential communications by the attorney to the client and between attorneys for the client are also privileged. 8 J. Wigmore, supra, section 2317 at 618-619 and section 2320 at 628. Karme v. Commissioner, 73 T.C. at 1183. It is not known by respondent how these documents became publicly available and in petitioner's possession. Respondent believes that an employee of the Office of the Chief Counsel made an unauthorized disclosure of the documents. Such a disclosure does not abrogate the privilege. 8 J. Wigmore, supra, section 2375 at 632-633. The documents objected to are properly excludable as privileged communications between attorney and client. Even assuming but not deciding that respondent must go forward with the evidence, we find no support for petitioner's contentions that the notice of deficiency was null and void and must be quashed. 2. Unreported Toke Income
During 1981, petitioner worked 2016 hours as a "21" dealer at Caesar's. Caesar's *206 dealers normally worked eight-hour shifts during 1981 with two consecutive days off per week. Petitioner usually had Mondays and Tuesdays off in 1981. The busiest days of the week for dealers at Caesar's are Friday and Saturday. In addition to salary paid by Caesar's, petitioner received tips (tokes) from the players at the "21" tables. "Tokes" are casino chips (house checks) that players either give to the card dealers directly or place along with their own bets as bets for the dealers. Tomburello v. Commissioner, 86 T.C. at 541. The tokes were received by petitioner while on duty at the tables, either directly from the players or through a "separate bet" made for petitioner (as the dealer) by a player. Winnings from such "separate bets" belonged to the player until he actually gave such winnings to the dealer. Twenty-one dealers are not allowed to gamble or place bets at their tables. The "21" dealers at Caesar's routinely pooled all tokes received by them, placing said tokes in a common toke box before leaving the area of the tables on a break or at the end of a shift. The total amount so pooled was divided at the end of a 24 hour period among all "21" dealers *207 on duty during that period. These pooled tokes were divided equally on the basis of a full share to each dealer that worked an eight-hour shifts. Dealers received their share of the pooled tokes in an envelope when they returned to work at the beginning of their next shift. Petitioner reported $ 8,611 of toke or tip income to her employer, which was included on petitioner's W-2 form for 1981. Total wages and other compensation reported on petitioner's W-2 form for 1981 were $ 19,029.94, which included the amount of $ 8,611 separately designated as "Declared Tips." Based on her 2016 total hours worked, petitioner reported that she received tokes at the rate of $ 4.27 per hour ($ 8,611 / 2016). Respondent determined that the toke income rate reported by petitioner was substantially less than it should have been for "21" dealers working at Caesar's. Respondent calculated the hourly toke rate he applied to petitioner by compiling amounts disclosed on tip calendars submitted by Caesar's "21" dealers for the year 1982. Respondent prepared computer runs of the cumulative "mode" amounts. The "mode" represents the amount most frequently shown on the calendars for a particular day *208 and shift. These amounts were then averaged to arrive at an hourly toke rate of $ 13.75. Using the above toke rate, respondent calculated petitioner's additional 1981 tax liability as follows: 2016 hours worked X $ 13.75 = total tokes of $ 27,720 less $ 8,611 reported equals $ 19,101 unreported toke income. With respect to this issue, petitioner alleges in her petition as follows: 2. Petitioner correctly filed form 1040 for tax year ending December 31, 1981 reporting gross income in the amount of $ 19,029.94 which included $ 8,611.00 in tip income reported to employer. * * * 4. Petitioner is in possession of all tip records reported to employer which will substantiate the correctly filed return for the year in question. * * * At trial, petitioner produced her "tip records" which she claimed "will substantiate (her) correctly filed return." Petitioner's records of tokes received in 1981 was maintained on the Service's Form 4070A (Employee's Daily Record of Tips). This printed form contained spaces for entry of the employee's name, the month, and year and for entries of "tips received directly from customers" on each day of a month. Petitioner entered amounts of toke *209 income claimed to have been received for each day she worked. On days which petitioner did not work, she wrote "Off" or "Vacation." The evidence at trial also included the testimony of respondent's witnesses, Higinia Deruaz and Mary Burns. Ms. Deruaz was a "21" dealer at Caesar's during 1981. Ms. Deruaz maintained her record of tokes received on monthly desk calendars. Mary Burns has been an Internal Revenue Service employee for 12 years. At the time of trial, Ms. Burns was a supervisory Internal Revenue agent and group manager of auditors assigned to develop tip rates for dealer and culinary tip projects throughout Nevada. Ms. Burns' group is assigned approximately 50-75 projects a year and has conducted such projects since 1982. In Lewis v. Commissioner, T.C. Memo. 1986-436, we remarked as follows with respect to respondent's development of these toke projects: During 1980 and 1981, respondent instituted in Nevada a toke compliance program in an attempt to stop a tax loss estimated to be in excess of $ 100,000,000 per year from the failure of casino dealers to fully and accurately report their toke income. The program was designed to conserve respondent's *210 Nevada audit resources while achieving an increase in the compliance by the dealers with the tip reporting requirements of the Internal Revenue Code. In general terms, under the discretionary program, the Service agreed not to audit a dealer's pre-1982 returns if the dealer fully participated in the program. [52 T.C.M. 468, 55 P-H Memo T.C. par. 86,436 at 1992.] Petitioner's first argument is that she maintained records of her tokes received during 1981 and that this Court should accept these records as an accurate account of tokes received by her in 1981. Respondent, on the other hand, argues that the toke diary "submitted to the Court at trial constitutes a gross understatement of tokes actually received by her." We agree with respondent. It is well established that tokes constitute compensation for services rendered and are includable in gross income under section 61. Olk v. United States, 536 F.2d 876 (9th Cir. 1976); Catalano v. Commissioner, 81 T.C. 8, 13 (1983), affd. without published opinion sub nom. Knoll v. Commissioner, 735 F.2d 1370 (9th Cir. 1984). The Court of Appeals for the Ninth Circuit, to *211 which this case would be appealable, has rejected the argument that tokes constitute nontaxable gifts. Olk v. United States, 536 F.2d at 879. See also Tomburello v. Commissioner, 86 T.C. at 542. Section 6001 and the regulations thereunder require taxpayers to maintain sufficient records to establish their correct tax liability. If a taxpayer receives income from tips, the required records include an accurate and contemporaneous diary of such income. Section 1.6001-1(a), Income Tax Regs. See also Kairis v. Commissioner, T.C. Memo. 1986-428. The method by which the tokes were split among "21" dealers at Caesar's Palace in 1981 has been described above and was stipulated to by the parties. The amount of tokes to be received by a "21" dealer was determined by a "toke committee." Petitioner testified at trial that the toke committee was comprised of elected dealers who split the tokes and put each share in an envelope with the dealer's name on it. Petitioner also testified during cross-examination that as far as she knew every dealer that worked during a twenty-four-hour period should earn the same amount of tokes as every other *212 dealer. Ms. Deruaz confirmed petitioner's testimony by stating that it was her understanding that she received the same amount of tokes as everyone else who worked a given twenty-four-hour shift. A chart prepared by Ms. Burns shows the amount of tokes reported by petitioner and by Ms. Deruaz during 1981. The difference in the amounts reported is substantial. For example, on January 1, 4, and 29, petitioner recorded toke income of $ 73, $ 33, and $ 40, respectively. Ms. Deruaz reported on her diary that $ 196, $ 103, and $ 140 was received on those same days. Petitioner reported to her employer in 1981, 38 percent of the amount Ms. Deruaz recorded in her diary for the same year. Petitioner offered no reasonable explanation for the substantial discrepancy in tokes allegedly earned by her as compared to her co-worker at Caesar's. As shown, the two dealers should have received the same amount of tips for each twenty-four-hour period that they both worked. Ms. Deruaz's average toke rate for the entire year was $ 13.35 per hour. In fact, petitioner should have earned more than Ms. Deruaz. Petitioner worked Fridays and Saturdays, two of the busiest days at the casino, while Ms. *213 Deruaz's diary discloses that she had those days off. If a taxpayer fails to keep the required records or the records maintained do not clearly reflect income, respondent is authorized under section 446 to compute income in accordance with such method as in his opinion clearly reflects the full amount of income received. Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). Respondent has great latitude in adopting a method for reconstructing income. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). The reconstruction need only be reasonable in light of all the surrounding circumstances. Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). A comparison of the diaries of petitioner and Ms. Deruaz and other evidence disclose a substantial underreporting of toke income by petitioner. Petitioner also argues that respondent was incorrect in determining her toke rate for 1981 by use of toke records maintained by other dealers for the year 1982. However, we find that the use of a toke rate for 1981 developed by 1982 records is reasonable under the circumstances. Mary Burns testified that the Service did not have a tip project at Caesar's *214 for 1981. Therefore, insufficient tip diaries were collected from dealers for 1981 to compute an average hourly rate. Respondent prepared a cumulative summary of tip diaries received for 1981, but it only covers the last two months of that year. There were no diaries received for the earlier months. From the dealers' diaries reviewed for these two months, respondent determined an hourly tip rate of $ 13.38. Accordingly, respondent reasoned that a reliable rate could not be computed based only on the last two months of 1981. Therefore, the $ 13.75 hourly rate computed for the full year 1982 was rolled back to 1981. This method was approved by the Court in Kairis v. Commissioner, T.C. Memo. 1986-428. Kairis, whom petitioner knew, was also a "21" dealer who underreported tips for 1981. Because Kairis maintained no records of the tip income he earned, the Court found that respondent reasonably applied the 1982 tip rate of $ 13.75 to the dealer for 1981. We commented: From the record before us it is apparent that respondent, in a thorough and professional manner, conducted an extensive examination of Caesar's toke records for 1982. While the determination might *215 have been more accurate if records for 1980 and 1981 were available, no such records were prepared for these years. Consequently, in the absence of figures for 1980 and 1981, the use of the figures for 1982 is not only justified but their use obviously produces the most correct result possible under all of the surrounding circumstances. * * * (52 T.C.M. 439, 441, 55 P-H Memo T.C. par. 86,428 at 1963.) Petitioner argues that her case is different since Kairis did not keep tip records and she did. Although petitioner did keep records, we find that these records were not accurately maintained. We agree with respondent that petitioner's maintaining such inaccurate records is the equivalent of Kairis' maintaining no records. We also note the striking similarity in the 1981 hours worked (2,063 and 2,016), total tokes received ($ 28,366.25 and $ 27,720.00), and toke income underreported ($ 19,196.25 and $ 19,109.00) by both Kairis and petitioner. See Kairis v. Commissioner, supra at n.4. The evidence is overwhelming that respondent has correctly redetermined petitioner's toke income. Accordingly, respondent is sustained on this issue. 3. Additions To Tax
*216 Negligence or intentional failure to keep adequate records of tip income which results in the underpayment of tax supports the imposition of the addition to tax under section 6653(a). Catalano v. Commissioner, 81 T.C. at 17. Petitioner has the burden of proving that her underpayment of taxes was not the result of her negligent disregard of these rules and regulations. Courtney v. Commissioner, 28 T.C. 658, 669 (1957). She has presented no evidence on this issue except her 1981 diary and her assertion that she reported all of her toke income for 1981 in that diary. Petitioner's allegations are unsupported. She failed to report all of her toke income received in her diary and also failed to report all of the toke income she recorded in her diary to her employer as required by section 6053 and its regulations. At trial, petitioner testified that if the Court added up her diary's toke totals for the year 1981, it would amount to $ 8,611, the amount of tokes she reported to Caesar's. We added up the entries on petitioner's monthly diary by month and then totaled the months. According to petitioner's monthly totals, she received tokes of $ 10,227 in *217 1981, rather than $ 8,611 reported to her employer. Our verified addition of the monthly totals in petitioner's diary results in tokes received by petitioner totaling $ 10,384. Using petitioner's figures of $ 10,227, she reported 84 percent of tips received to her employer rather than the total amount recorded in her diary. We affirm the additions to tax determined by respondent. Accordingly, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩