JOHN J. and INGRID R. GOULD, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Gould v. Commissioner
Docket No. 12534-85
United States Tax Court
T.C. Memo 1991-34; 1991 Tax Ct. Memo LEXIS 54; 61 T.C.M. (CCH) 1742; T.C.M. (RIA) 91034; January 28, 1991, Filed *54 Decision will be entered for the petitioner as to the deficiency and addition to tax. John J. Gould, pro se. David W. Sorensen, for the respondent. GALLOWAY, Special Trial Judge.
GALLOWAY
MEMORANDUM OPINION This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1954 and Rules 180, 181, and 182. [1]
By notice of deficiency dated March 13, 1985, respondent determined a deficiency of $ 7,775.59 in petitioners' 1981 Federal income tax and additions to tax under sections 6653(a)(1) and 6653(a)(2) in the respective amounts of $ 388.78 and 50 percent of the interest due on the amount of $ 7,775.59. The petition was filed on May 13, 1985, at which time petitioners were residents of Reno, Nevada. This case was one of a group of assigned cases called at a pretrial session of the *55 Court held at Carson City, Nevada. The cases contain common questions of fact or law and are among the remaining unresolved cases which arose from a toke compliance program initiated by respondent in Nevada in 1982. (An explanation of respondent's toke compliance program is found in Petrie v. Commissioner,T.C. Memo 1990-168, 1990 Tax Ct. Memo LEXIS 194, 59 T.C.M. 275, 278, 1990 T.C. Memo 168; 59 P-H Memo T.C. par. 90,168). At the pretrial session, the Court requested all taxpayers to report on whether their cases would be settled or ready for trial at a future trial session in Reno, Nevada. John J. Gould (petitioner) and respondent appeared at the calendar call of the pretrial session and requested that the case be tried. There was no appearance by petitioner Ingrid Gould. Petitioner stated that he was divorced from Ingrid Gould in 1985, four years prior to the trial date. Petitioner had no knowledge of his former wife's whereabouts. The petition was signed by both Mr. and Mrs. Gould on May 5, 1985, and filed with the Court on May 13, 1985. Respondent filed a written Motion To Dismiss For Lack Of Prosecution As To Petitioner Ingrid R. Gould, in which he alleged that he had *56 been unable to contact Mrs. Gould since her address was unknown and all efforts to locate an address had been unsuccessful. Respondent's motion was taken under advisement. The issues for decision are: (1) Whether petitioner and Ingrid R. Gould underreported toke income on their 1981 joint tax return; (2) whether petitioner and his former wife are liable for additions to tax for negligence or intentional disregard of rules and regulations; and (3) whether petitioner is entitled to innocent spouse relief pursuant to section 6013(e). Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. 1. Underreported Toke Income
The parties agree that during 1981, Ingrid R. Gould was employed at the MGM Grand Hotel and Casino in Reno (MGM) as a "21" dealer. She was paid for 1,774 hours of work at MGM in 1981, working as a "21" dealer for 1,710 hours on the day shift. MGM dealers normally worked eight-hour shifts during 1981. In addition to her salary paid by MGM, Mrs. Gould received tips (tokes) from the players at the "21" tables. "Tokes" are casino chips (house checks) that players either give to the card *57 dealers directly or place along with their own bets as bets for the dealers. See Tomburello v. Commissioner,86 T.C. 540, 541 (1986), affd. without published opinion 838 F.2d 474 (9th Cir. 1988). The tokes were received by Mrs. Gould while on duty at the tables, either directly from the players or through a "separate bet" made for her (as the dealer) by a player. Any "separate bet" was at all times under the control of the participating player. If such "separate bet" resulted in a win, the player had the right to keep such winnings for himself rather than give them to the dealer. Winnings from a "separate bet" belonged to the player until he actually gave such winnings to the dealer. The Nevada Gaming Commission considered a "separate bet" placed by a player at a "21" table for the dealer as one made between the player and the casino. Twenty-one dealers are not allowed to gamble or place bets at their tables. Under house rules at MGM, a "21" dealer is not allowed to advise the player how a hand should be played or how a bet should be made. However, it was customary at MGM for a "21" dealer to signal the receipt of a toke from the player *58 either by tapping the chips on the table or by announcing receipt of the chips verbally before pocketing said tokes. Twenty-one dealers at MGM routinely pooled all tokes received by them, placing said tokes in a common toke box before leaving the area of the tables on a break or at the end of a shift. The total amount so pooled was divided at the end of each shift among all "21" dealers on duty during that period. The pooled tokes were divided equally on the basis of a full share to a dealer for each eight-hour shift. Dealers received their share of the pooled tokes in an envelope when they returned to work at the beginning of their next shift. Petitioner does not have a written diary, log, worksheet, or any other contemporaneously kept accounting of toke income maintained by Mrs. Gould during 1981. On their 1981 tax return, petitioner and Mrs. Gould reported as income his wages earned as a U.S. postal worker of $ 27,723 and Mrs. Gould's wages from MGM totaling $ 10,035, of which $ 285 represented toke income. Respondent determined that petitioner and Ingrid R. Gould had underreported Mrs. Gould's toke income by the amount of $ 18,097.50. As trial commenced, respondent conceded *59 that the hourly rate of $ 10.75 used to determine Mrs. Gould's underreported toke income should be adjusted to an hourly rate of $ 7.34. As a result of this concession, respondent alleged that Mrs. Gould's underreported toke income should be reduced from $ 18,097.50 to $ 12,551.40 and that the 1981 deficiency in tax due from petitioner and Mrs. Gould should be $ 5,147, plus additions to tax under sections 6653(a)(1) and 6653(a)(2) in the respective amounts of $ 257.35 and 50 percent of the interest due on $ 5,147. Respondent's witness, a revenue agent tip income project coordinator, (the project coordinator) gave testimony and submitted schedules in support of the new $ 7.34 tip rate and respondent's revised calculation of underreported toke income. The project coordinator explained that MGM "21" dealers who agreed to participate in respondent's 1982 toke compliance program formed a "toke committee" to provide a "group reporting system" of tokes received by the dealers in 1982. The results furnished to the Internal Revenue Service by the committee were summarized by respondent's agents, resulting in a $ 7.34 day shift rate for MGM "21" dealers. The 1982 tip rate was applied to *60 MGM "21" dealers whose 1981 returns were audited as part of the 1982 toke compliance program. The 1981 return of petitioner and Mrs. Gould was audited because respondent determined that, although Mrs. Gould had reported $ 7,098 toke income on her 1982 joint tax return, an additional $ 6,628.50 was unreported. However, the record does not disclose whether Ingrid Gould had agreed to participate in the toke compliance program. Petitioner disagreed that Mrs. Gould's unreported toke income substantially exceeded the amount of $ 285 reported on the 1981 return. However, petitioner admitted that he was unable to controvert respondent's determination that unreported toke income totaled $ 12,551.40. Respondent's revised determination of underreported toke income is sustained. 2. Additions To Tax
Negligence or intentional failure to keep adequate records of tip income which results in the underpayment of tax supports the imposition of the addition to tax under section 6653(a). Catalano v. Commissioner,81 T.C. 8, 17 (1983), affd. without published opinion sub nom. Knoll v. Commissioner,735 F.2d 1370 (9th Cir. 1984). Petitioner has the burden *61 of proving that the underpayment of taxes on his joint tax return was not the result of his and Mrs. Gould's negligent disregard of rules and regulations. He has failed to do so. Accordingly, respondent is sustained. Bixby v. Commissioner,58 T.C. 757, 792 (1972). 3. Innocent Spouse
Generally, a husband and wife who file a joint return are jointly and severally liable for the tax due. Sec. 6013(d)(3). Petitioner argues that he is entitled to the innocent spouse relief provided by section 6013(e)(1) [2] which he may utilize if: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * *.
*62 Sec. 6013(e)(1)(A)-(D). A taxpayer must prove compliance with each of these provisions if there is to be any relaxation of the rule of joint and several liability upon filing a joint return. Sonnenborn v. Commissioner,57 T.C. 373, 381 (1971). However, we recognize that in enacting section 6013(e) Congress "intended the exception to remedy a perceived injustice, and we should not hinder that praiseworthy intent by giving the exception an unduly narrow or restrictive reading." Sanders v. United States,509 F.2d 162, 166 (5th Cir. 1975). The requirement of paragraph (A) is satisfied in that petitioner and Ingrid Gould signed, dated, and filed their 1981 joint tax return on or about April 15, 1982. Respondent does not dispute that there is a substantial understatement attributable to a grossly erroneous item of Ingrid required by paragraph (B). With respect to paragraph (C), the question of whether a taxpayer seeking innocent spouse relief had reason to know of a substantial understatement is more difficult to determine than that of actual knowledge. See Streit v. Commissioner,T.C. Memo 1989-265. In *63 Estate of Jackson v. Commissioner,72 T.C. 356, 361 (1979), we stated: "In order to satisfy her burden of proof with regard to whether she had reason to know of the omitted income, petitioner must establish that a reasonably prudent taxpayer, with her knowledge of the family finances, would have no reason to know of the omission." See also Sanders v. United States, supra at 166-167. In this case, petitioner was well acquainted with family financial matters since he managed the household finances with his salary as a postal worker and Mrs. Gould's MGM paychecks which she gave petitioner for household expenses. However, there is no evidence that petitioner received from Mrs. Gould any unreported toke income either to assist meeting the household expenses or to acquire extra purchases for the benefit of the three family members, including petitioner's young son born March 31, 1981. Petitioner testified that he and his former wife never acquired an expensive home or boat and that they lived and continued to live in a mobile home. Respondent's cross-examination was directed to whether petitioner knew that Mrs. Gould had substantial unreported toke income from *64 MGM, whether petitioner financed his former wife's gambling activities and whether petitioner joined Mrs. Gould in her gambling activities. Petitioner testified that he did not finance Mrs. Gould's gambling activity and that he personally gambled for recreation purposes only. There was some testimony that petitioner knew or had reason to believe that his former wife had received "substantial" unreported toke income. However, petitioner's "belief" of Mrs. Gould's unreported toke income was retrospective rather than on or before April 15, 1982, when the 1981 tax return was filed. Petitioner's "belief" of Mrs. Gould's unreported toke earnings was based on knowledge gained from a prior trial of the same issue in 1982 and what he knew from the 1984 joint tax return (in evidence) upon which Mrs. Gould reported toke income to her employer totaling $ 8,590. We find that petitioner has established that he did not know nor did he have reason to know that Ingrid Gould had received substantial unreported toke income in 1981. The remaining provision is whether, taking into account all the facts and circumstances, it would be inequitable to hold petitioner liable for the deficiency and additions *65 to tax attributable to the 1981 understatement under section 6013(e)(1)(D). Section 1.6013-5(b), [3] Income Tax Regs., states that one factor to be considered in determining whether it would be inequitable to hold a spouse liable for a deficiency is "whether the person seeking relief significantly benefitted, directly or indirectly, from the items omitted from gross income." The regulation also states that "Other factors which may also be taken into account * * * include the fact that the person seeking relief has been deserted by his spouse or the fact that he has been divorced and separated from such spouse." *66 We found in our prior discussion of section 6013(e)(1)(C) that neither petitioner individually, nor the Gould household or family significantly benefited from the unreported toke income received by Mrs. Gould as a result of her employment at MGM. Accordingly, petitioner has complied with that factor specified in the regulations. It would also be inequitable to hold petitioner liable for the tax and additions to tax because of the future hardship which would be imposed upon petitioner and his family if we failed to grant petitioner innocent spouse relief. See Sanders v. United States, supra at 171 n.16. Mrs. Gould left the family home, petitioner, and the couple's two small children suddenly without warning one night in November 1985. In the subsequent divorce, petitioner received custody of the children (aged four and one at the time their mother deserted them) and has cared for them since. Petitioner stated that his wife's reason for leaving the family (written in her note left to him when she suddenly departed) was that she had incurred an undetermined amount of gambling debts. Mrs. Gould has not seen or provided any support for the children since the *67 parties separated. Petitioner's most recent contact with Mrs. Gould was when she called him collect from Las Vegas, Nevada, about 10 months prior to the date of this trial. During a trip through Las Vegas several months later, petitioner attempted to contact Mrs. Gould and found she was no longer at the location she had called from. Under these facts and circumstances, we find it would be inequitable to hold petitioner liable for the tax and additions to tax determined in the year 1981. Accordingly, an appropriate order will be entered granting respondent's motion to dismiss for lack of prosecution as to petitioner Ingrid R. Gould and, Decision will be entered for the petitioner as to the deficiency and addition to tax.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 6013(e) was amended by section 424(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 801. The amendment is effective for all taxable years to which the Internal Revenue Codes of 1954 and 1939 apply.↩
3. Section 6013(e) was amended after sec. 1.6013-5(b), Income Tax Regs., was promulgated. Although section 6013(e), as amended, no longer specifically requires us to determine whether a spouse significantly benefited in order to determine innocent spouse relief, this factor is still to be taken into account in determining whether it is inequitable to hold a spouse liable. See H. Rept. 98-432 (Part 2) 1501, 1502 (March 5, 1984); Styron v. Commissioner,T.C. Memo 1987-25↩ at n.15.